## GEORGE A. FULLER CO. v. DOYLE et al.

### (Circuit Court, E. D. Missouri, E. D.   June 4, 1898.)

### No. 4,097.

1. ACCOUNT—WEIGHT OF EVIDENCE.
    Where, in an action for the cost of erecting a building, defendant has had possession of plaintiff's itemized account for several months, its failure to question any item thereof at the trial is strong evidence that the account is correct.

2. BUILDING CONTRACT—CONSTRUCTION—RELEASE OF SURETY.
    A building contract provided that, if the contractor should fail to supply a sufficiency of properly skilled workmen or of materials of the proper quality, or to prosecute the work with promptness and diligence, the owner might, upon securing a certificate of the architect to the fact of such failure, and after giving three days' notice to the contractor, enter upon the premises and finish the work. *Held*, that such provision contemplates a case where the contractor claims to be complying with his obligation, and not a case where the contractor, before doing any substantial part of the work, absolutely abandons it, and voluntarily surrenders the premises to the owner for its completion. *Held*, also, that neither the failure to secure the architect's certificate and give the three days' notice to the contractor, nor the waiver of them by the contractor, under such circumstances, will release the surety on the contractor's bond.

3. CONTRACTOR'S BOND—SURETY—NOTICE OF BREACH.
    In the absence of a provision in the bond requiring it, a surety is not entitled to any formal notice of a breach of the contract by the principal, before the institution of a suit.

4. BUILDING CONTRACT—CONSTRUCTION.
    A building contract provided that, upon failure by the contractor to perform its conditions, the owner "shall be at liberty * * * to provide any such labor or materials, * * * and to enter upon the premises and take possession, for the purpose of completing the work, * * * of all materials, tools, and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor." *Held* that, upon a breach of the contract, the owner could complete the building himself, and need not employ some other party to do so.

5. ALTERATION OF BUILDING CONTRACT—LIABILITY OF SURETY.
    A building contract provided that upon a failure by the contractor to perform the contract, the owner might complete the building at the contractor's expense. *Held* that, after the abandonment of the contract by the contractor, the fact that the owner in completing the building used some materials different from those specified in the contract, due allowance being made for difference in price, did not constitute such an alteration of the contract as would release the sureties on the contractor's bond.

6. BREACH OF BUILDING CONTRACT—PLEADING.
    A building contract, under which the owner had the right to complete the building upon default by the contractor, provided that the expenses incurred by the owner should be audited and certified by the architect, whose certificate should be conclusive on the parties. *Held* that, in an action by the owner for expenses so incurred, the failure of the owner to obtain such certificate could not be raised by the general denial.

This was an action by the George A. Fuller Company against J. G. Doyle and the American Bonding & Trust Company of Baltimore on a contractor's bond.

Boyle, Priest & Lehman, for plaintiff.
M. W. Huff and Wm. J. Stone, for defendants.

ADAMS, District Judge. This is an action at law wherein the plaintiff, as obligee in a penal bond for $5,000, seeks to recover from defendant Doyle, as principal obligor, and the other defendant as surety, certain damages resulting from a failure of the principal to do certain brickwork in the construction of what is known as the "Fullerton Building," located on the corner of Seventh and Pine streets, in the city of St. Louis, as required by a contract existing between the plaintiff and defendant Doyle in relation thereto. The condition of the bond, among other things, requires the defendant Doyle to well and truly perform the contract referred to.

In order to properly dispose of this case, it seems to me necessary to refer quite at length to the pleadings, with a view of ascertaining the issues on trial.

The plaintiff counts on the bond, and, by way of assigning breaches, alleges that Doyle, soon after commencing the work required by his contract, totally abandoned the same, and that plaintiff afterwards undertook, and did perform, the work and labor required of Doyle under his bond, and in so doing did necessarily and reasonably expend $4,765.93 over and above the amount for which Doyle had agreed to do it. Plaintiff's allegations in relation to the abandonment of the work by Doyle consist of statements of admissions made by Doyle to that effect, and hardly reach that degree of certainty, in stating ultimate facts, required by rules of pleading; but the answers of both defendants so clearly treat the petition as alleging a total abandonment of the work, and so supplement the same, as to present the issue of abandonment clearly and distinctly.

The defendant trust company, for its amended answer, first denies every allegation of the petition, except such as it afterwards expressly admits. I will confine myself to a consideration of this amended answer, as it includes all that is claimed in the answer of Doyle. An analysis of the trust company's answer shows that it admits—First, that the defendants executed the bond sued on; second, that Doyle had a contract with the plaintiff to furnish all the materials and do the work referred to in the petition; third, that Doyle, soon after making the contract, abandoned the same, and refused to proceed further in its performance, and surrendered the premises to the plaintiff, and that thereafter the plaintiff took possession of the premises described in said contract, and proceeded in its own way, and on its own account, to do the work mentioned in Doyle's contract. And for its affirmative defenses the defendant trust company pleads, in substance, that it was provided in the contract between Doyle and the plaintiff that if Doyle at any time should fail, refuse, or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any agreements contained in said contract, such refusal, neglect, or failure being certified by the architect, the plaintiff, after three days' written notice to said Doyle, should be at liberty to provide such labor and materials, and to deduct the cost thereof from any money due, or thereafter to become due, to said Doyle under said contract, and that the plaintiff should be at liberty to terminate the employment

of said Doyle for said work, and to enter upon the premises and take possession, for the purpose of completing the work comprehended under said contract, of all materials, tools, and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and, in case of such discontinuance of the employment of said Doyle, that he (Doyle) should not be entitled to receive any further payment under said contract until the said work should be wholly finished, at which time, if the unpaid balance of the amount to be paid under said contract should exceed the expense incurred by plaintiff in finishing the work, such excess should be paid by plaintiff to said Doyle, but if such expense should exceed such unpaid balance then said Doyle should pay the difference to the plaintiff. Defendant trust company, after pleading the foregoing provisions of the contract known and referred to as article 5 thereof, alleges, in substance, that after the making thereof, to wit, on the 12th day of May, 1897, Doyle, by his certain writing described in plaintiff's petition, made and delivered to the plaintiff, waived the three-days notice provided for in that part of the contract to which attention has just been called, and also waived the certificate therein provided for to be made by the architect, and notified the plaintiff that he could not perform said contract, and thereupon fully abandoned the performance of the same, and surrendered the premises to the plaintiff, and that the plaintiff proceeded, in its own way and on its own account, to construct the building mentioned in said contract, including the brick masonry therein, without giving notice to this defendant, namely, the trust company, of the fact that said Doyle had waived said three days' written notice and certificate of the architect, or of the fact that the said Doyle had abandoned said work, and that plaintiff had undertaken to perform the same. The defendant trust company further alleges that it was not advised of such action on the part of Doyle until after plaintiff undertook to do the work; meaning, by necessary inference, that it was so advised at that time. The defendant trust company further alleges that it was the duty of the plaintiff to notify it of Doyle's abandonment of the contract, and further alleges, in its answer, that, under the terms and conditions of said contract so pleaded by it, it became and was the duty of the plaintiff to employ some other person or persons to finish the work which Doyle had contracted to do and had abandoned as aforesaid. And defendant trust company concludes that, by reason of the plaintiff's failure to give the notice to defendant, prior to its entering upon and performing the work which Doyle had undertaken to do, of the fact that Doyle had abandoned the same, and by reason of the fact that the plaintiff had not employed some other person or persons to finish the work which Doyle had failed to do, but, on the contrary, proceeded to perform the work itself, the trust company was discharged from any liability. And for a second affirmative defense the trust company alleges, in substance, that, under the contract between Doyle and the plaintiff, Doyle was required to perform the work in question in strict accordance with the terms and conditions of the contract, including the

87 F.—44

drawings and specifications referred to in the contract, and then alleges, in substance and effect, that after Doyle had abandoned the performance of his contract altogether, and the plaintiff had taken possession of the premises to do the work undertaken to be done by Doyle, the plaintiff, in completing the work, made certain changes from that which was specifically provided for in the contract with Doyle, namely, that whereas, said contract, specifications, and drawings provided "that the three faces of the court on the south elevation should be laid up with a light buff press brick, standard size," the plaintiff proceeded to lay the faces of the court on said elevations with white enameled brick; and whereas, it was provided in said contract, specifications, and drawings "that the brick in the walls above the first three stories should be laid in lime-mortar bedding," the plaintiff, after it took hold of the work, substituted and used, in place of lime-mortar bedding in laying the brick in said walls, mortar composed one-half of lime mortar and one-half cement; and whereas, it was provided in said contract that the facings of all exterior walls should be hollow brick, the plaintiff, after it took possession of said work, substituted other and different brick and material. Defendant trust company alleges that all said changes were made by the plaintiff wholly without the knowledge or consent of the trust company defendant, and that by reason of said changes it (the trust company) is discharged from any liability on the bond.

The foregoing constitute all of the defenses pleaded by the defendant trust company in this case.

There are several statements of fact found in the answer of the defendant trust company which seem to me to be isolated expressions of fact, and not intended to state any defense whatsoever, such as the statement found in the early part of the answer to the effect that, according to the terms of the contract between Doyle and the plaintiff, all the work was to be done by Doyle to the satisfaction of the architect; and also that, in accordance with the terms of the contract, no alterations should be made in the work shown or described in the specifications and drawings, except upon a written order of the architect, and, even when so made, that the value of the work added or omitted should be computed by the architect, and the amount so ascertained added to or deducted from the contract price; and also that, in accordance with the terms of the contract, in case of any dissent from the determination of the architect, the value of the work added or omitted should be referred to three disinterested arbitrators, and that the decision of any two of them should be final and binding; and also that, under the terms and conditions of the contract, no alterations should be made in the specifications and drawings for the brick masonry work to be done by Doyle, nor could the architect order any changes or alterations therein, unless the parties to said contract and this defendant should first consent and agree thereto.

Concerning these several independent statements of fact, it is proper to say that, while the provisions of the contract in relation thereto are set forth in the answer, there is no allegation of any vio-

lation of them, or any statement of their relation to other subject-matters involved in the answer pleaded as defenses, and accordingly the further consideration of them is dispensed with.

This brings me to consider the following issues raised by the pleadings: First. What is the reasonable value of the work done by the plaintiff in completing the performance of Doyle's contract after he abandoned it? Second. Does the waiver by Doyle of the three-days written notice and the architect's certificate, required by article 5 of the contract, or (to give the defendants the broadest possible construction of their pleadings) does the fact that no such notice was given, or no such certificate furnished, constitute a defense to the trust company? Third. Was it the duty of the plaintiff to notify the defendant trust company of the fact that Doyle had abandoned his contract before it (the plaintiff) undertook the performance of it? Fourth. Was the plaintiff, under the terms of the contract, at liberty to perform Doyle's contract itself, or was it obligatory upon it to employ some other person or persons to do it? Fifth. Does the fact that the plaintiff, after Doyle abandoned the performance of the contract altogether, made some changes in executing the details of the work, as specified in the answer, constitute a defense in favor of the trust company?

I will consider these issues in the order stated.

And, first, as to the reasonable value of the work done by the plaintiff in completing the performance of Doyle's contract. The plaintiff's superintendent produced an itemized account of all expenditures made in doing the work which Doyle had undertaken to do, with vouchers detailing the same, and furnished proof that the same were necessary, and the amount of money paid therefor, as shown in the account, reasonable. The defendants did not question any one of the items charged, but introduced certain expert testimony concerning some features of the work. On the cross-examination of these witnesses it became more apparent that plaintiff's itemized account was not unreasonable. Not only is this true, but the evidence discloses that the defendants had been in possession of plaintiff's account for several months before the suit was brought. They therefore had ample opportunity to investigate and assail each and every item of such account. The fact that no attempt is made to do so is quite significant of the opinion of the defendants themselves, and, as one of them is the contractor who had bid for and contracted to do the work in question, he must be presumed to be entirely familiar with every detail of the cost. The failure, therefore, to question any item, is, in itself, under the circumstances, very persuasive assurance that the court cannot go far amiss in giving credence to the reasonableness and necessity of each of them. A complication arises from the method which plaintiff employed in keeping its account of this work. It appears that, after Doyle abandoned the work, the plaintiff, as it progressed with it, varied from particular specifications, in the respects specified in the defendant's answer, by using certain enamel brick where light buff brick were specified, and by using cement in place of mortar for certain parts of the work, and by substituting certain other kinds of brick where hollow brick were

specified, and in setting certain terra cotta which was not specified in the Doyle contract. In making up and stating its account of the material furnished and work done, plaintiff embraced all the work done by it in one account, and gives credit to the defendants for all the excess in value of the work not included in the Doyle contract, over and above the value of the work called for by that contract. I am satisfied from the evidence that full credits were allowed to the defendants for them, and that the amount sued for, namely, $4,765.93, is the reasonable value of the materials necessarily furnished and the labor necessarily done by the plaintiff in furnishing the materials and doing the very work which Doyle ought to have done, but failed to do.

The next issue tendered by the answer is that Doyle waived the three-days notice required to be given to himself by article 5 of the contract already quoted, and waived the certificate therein provided for on the part of the architect, and that the plaintiff proceeded to do the work without giving the defendant trust company notice of the fact of such waiver by Doyle, or that Doyle had abandoned his work. A true construction of the provisions of article 5 of the contract, in relation to the giving of the three-days notice to Doyle, and requiring the certificate of the architect, seems to me to be that when the owner, which in this case is the plaintiff, should, at any time during the prosecution of the work by Doyle, become dissatisfied with it, and determine to take it out of his hands while he was proceeding to do the work, and claiming that he was conforming to the requirements of the contract in so doing, before taking it out of his hands, under such circumstances, it should have a certificate of the architect to the effect that Doyle was not conforming to the contract, and afterwards should give to him (Doyle) three days' notice before it (the plaintiff) should be at liberty to take possession of the work and proceed to finish it.

The facts as disclosed by the pleadings and the proof do not fall within the provisions of the contract, as so construed. The pleadings show, and the evidence proves beyond question, that there was no dispute between the plaintiff and Doyle in relation to the non-performance of his contract. He scarcely began work under it. He says in his testimony that he did only five or six days' work. He voluntarily abandoned the performance of his contract. Under such circumstances, the requirement of a certificate by the architect of a failure to do the work in accordance with the requirements of the contract was inapplicable, and the three-days notice on the part of the owner to Doyle that the owner would proceed with the work was not required. It follows that, if no such notice or certificate was required, the surety in the bond was entitled to no notice that they were not given, or that they were waived. It is also to be observed that there is no provision of the contract requiring any notice to be given to the trust company of the fact of such want of certificate, or of such notice to Doyle, or of the fact that Doyle had abandoned his contract; and I know of no legal principle, in the absence of such a provision of the contract, which requires the obligee in a bond to give formal notice to a surety of a breach of the condition of the bond.

But if the three days notice in question and the certificate of the architect were required, it being only for the benefit of the contractor, Doyle, his waiver thereof, as shown by the evidence, under the peculiar facts of this case, amounting, as it does, to evidence of actual notice, is so immaterial and inconsequential a matter as will not affect the surety's liability; and, if it were necessary to give formal notice to the surety of a breach of the condition of the bond, the answer of the surety shows that it was fully advised thereof as soon as the plaintiff undertook to do the work in question, and this, according to the proof, was on or very near to the day of Doyle's actual abandonment of it.

The next issue tendered by the answer, namely, that the plaintiff, by undertaking itself to do Doyle's work, instead of employing some other person or persons to do it, discharged the surety, necessitates a consideration of the contract between the plaintiff and the defendant Doyle, and especially of article 5 thereof, which is set forth in the answer. By reference thereto it appears that, in the event of failure on the part of Doyle to furnish the necessary workmen and material and to perform his contract, "the plaintiff * * * shall be at liberty * * * to provide any such labor or materials, * * * and to enter upon the premises and take possession, for the purpose of completing the work comprehended under such contract, of all materials, tools, and appliances thereon, and to employ any other person or persons to finish the work and to provide the materials therefor." It is contended that this phraseology, "and to employ any other person or persons," etc., evinces an intention on the part of the contracting parties to make the employment of some person or persons other than the plaintiff the exclusive method of doing the work, in the event that Doyle failed to do it. I cannot agree to this construction of the contract. In my opinion, ample authority had been conferred upon the plaintiff by language preceding this clause, so that the particular language relied upon by the defendants should be held to enlarge, rather than limit, the authority. The intention of the parties manifestly was to authorize the plaintiff either to do the work itself or to employ others to do it. This construction is reinforced by the language employed in the latter part of article 5, where reference is made to the expense to be incurred by the plaintiff "in finishing the work." Such being my construction of the contract, it follows that the bare fact that the plaintiff proceeded by and through its own officers and agents to do the work which Doyle had failed to do, instead of employing some outside persons to do the same, constitutes no defense.

The next issue tendered by the answer is whether the changes made by the plaintiff in executing the details of the work, as already specified, after Doyle had abandoned it, constitute any defense on the part of the surety. Plaintiff's cause of action accrued at the time Doyle abandoned the work, and such abandonment constitutes the breach of the bond sued on in this case. While the court must carefully consider any and all changes made in the progress of completing the work by the plaintiff, with a view of accurately ascertaining the actual cost of finishing the very work contracted to be done

by Doyle, it cannot, in my opinion, treat these changes as modifica-tions of the contract between plaintiff and defendant Doyle. Before plaintiff undertook the work, the contract had been broken by Doyle, and plaintiff's rights and Doyle's obligations under it had become fixed. If plaintiff made any changes in the details of the work in the progress of completing it, they were not made as a result of any agreement between it and Doyle, such as usually operate to dis-charge a surety, and such changes imposed no new or modified obliga-tions upon Doyle. He had already failed to perform his contract, and abandoned the work, and plaintiff's cause of action had arisen there-upon, and, in my opinion, the surety's liability is in no manner af-fected by the fact that plaintiff, while it was doing the very work which Doyle had contracted to do, did, of its own motion, some other things, for the doing of which no claim is made against Doyle or his surety. The evidence offered by the defendant to prove the changes referred to at the trial was, on the objection of the plaintiff, ruled out, and I think no error was committed in so doing.

I have now considered and disposed of the several issues raised by the pleadings in the case, but another question is seriously debated by counsel for the defendant trust company, and that is that the plain-tiff's petition fails to state a cause of action, in this: that, after set-ting forth so much of article 5 of the contract between the plaintiff and Doyle as has already been quoted, the plaintiff proceeds and copies the balance thereof in its petition, as follows: "The expense incurred by the owner [George A. Fuller Company], as herein pro-vided, either for furnishing materials or for finishing the work, and any damages incurred through such default, shall be audited and certified by the architect, whose certificate thereof shall be conclu-sive upon the parties." It is contended in argument that, in this suit on a bond to secure the faithful performance of this contract, there can be no recovery against Doyle, or the trust company as surety, on the bond, without an averment that the damages incurred by Doyle's default had been audited and certified by the architect. This stipulation of the contract relates to the amount of recovery, and not to the right of recovery. It is that kind of a stipulation which the plaintiff, if it desired to avail itself of it as a right con-ferred upon it by the contract, should have pleaded, and alleged the award made by the architect, and relied upon this award as its meas-ure of damages. The plaintiff having failed to do so, the defendants might have pleaded this stipulation, and claimed under it, but in doing so must have pleaded the facts as the basis of the right. In this case neither party by their pleadings claim under this stipula-tion. On the contrary, a distinct and positive issue is tendered by the plaintiff as to reasonable value of the work required to be done by the plaintiff to perform Doyle's contract. This issue was ac-cepted by the defendants in and by their general denial, and insisted upon by their counsel as the issue at the trial of the case. Each and both of the parties, by their pleadings and conduct at the trial, must therefore be held to have waived the benefits of this stipulation. This was the view entertained by the court at the trial, and, in har-mony with it, the objection of defendants' counsel to plaintiff's offer

to prove the award of the architect was sustained, and plaintiff was required to stand on the issue of reasonable value, as then insisted upon by the defendants' counsel. Because, therefore, conformity to the requirement of the stipulation in question did not affect the right of recovery, but only the remedy or the amount of recovery, and because the parties, notwithstanding the stipulation, deliberately joined issues on the reasonable value of the work done by plaintiff in the performance of the work required of Doyle under his abandoned contract, it cannot now be held that the petition failed to state a cause of action.

The plaintiff having offered no evidence to sustain its claim for liquidated damages by reason of the delay in the completion of the building resulting from Doyle's default, there is no occasion for any reference to that part of plaintiff's petition or the issues raised thereby. There will be a judgment for the plaintiff in this case for the amount of $4,765.93, with interest thereon from the date of the institution of this suit.