# CHURCH OF THE IMMACULATE CONCEPTION v. ROY E. CURTIS and Others.[1]

June 18, 1915.

Nos. 19,241, 19,305—(149, 150).

**Building contract — default — completion by owner.**

1. A building contract provided that, whenever the architect should certify that the contractors were in default, and such default should continue for three days after written notice thereof, the owner might complete the contract at the expense of the contractors, and that the architect should determine the amount of expense incurred by the owner for that purpose, which determination should be conclusive upon the parties. After partially performing the contract, the contractors became financially embarrassed, and were unable to complete it and so informed the owner. By agreement the contractors superintended the performance of the remainder of the work, and the owner paid the bills for the labor and material necessary to complete it. The contractors approved all such bills, and gave written orders to the owner to pay the same before they were paid. *Held* that the parties themselves having admitted the default and agreed upon the amount expended by the owner in consequence thereof, there was no occasion for having such questions determined by the architect, and that the owner could recover

[1] Reported in 153 N. W. 259.

for such expenditures without having the amount thereof or the necessity therefor determined by him.

**Contractor's bond — notice to surety — mechanic's lien.**

2. The contractors gave a surety bond, which required the owner to notify the surety of any act on the part of the contractors involving a loss for which the surety was responsible immediately after the owner had knowledge thereof. *Held:* (1) That omitting to give notice of the failure of the contractors to complete the contract within the stipulated time, no damage being claimed for such default, did not relieve the surety from liability for other defaults; (2) that the existence of claims against the contractors aggregating less than the amount which would become due them from the owner within four days from the time the owner learned thereof, and which were promptly paid out of such amount, did not constitute a default within the meaning of the bond; (3) that, in the absence of prejudice from the delay, a notice given October 9, of a lien which came to the knowledge of the owner October 4, was sufficient, where the intervening time had been occupied in ascertaining the financial condition of the contractors.

**Action against surety — limitation of action.**

3. A provision in the bond that suit must be brought within six months after breach of the contract, refers to a breach which gives a right of action upon the bond, and a suit brought within six months after such right of action accrues is brought within the prescribed time.

**Payment of claim.**

4. The payment of a nonlienable claim, filed as a lien, out of funds then due the contractors and by their order, is without prejudice to the surety.

**Harmless error.**

5. Failure to submit a case to the jury as required by chapter 245, Laws 1913, where it clearly appears that such submission could not have changed the result, is error without prejudice.

**Admission of evidence.**

6. There were no material errors in the rulings upon the admission of evidence.

Action in the district court for Hennepin county against copartners doing business under the firm name of Brioschi-Minuti Co. and the Maryland Casualty Co. to recover $14,430. Defendant casualty company alleged that plaintiff did not notify the answering defendant of the default of the contractor until October 9, 1913, and that the action was commenced more than six months after the breach of con-

tract by the contractor, in violation of the express provisions of the bond. The case was tried before Dickson, J., who denied motions of defendants for a directed verdict and granted the motion of plaintiff for a directed verdict for $3,822.47. From an order denying the motion of defendant contractors for a new trial, they appealed. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant casualty company appealed. Affirmed.

*Markham & Brill* and *Barrows, Stewart & Ordway,* for appellants.
*E. A. Prendergast* and *James E. O'Brien,* for respondent.

TAYLOR, C.

The defendants Brioschi-Minuti Co. a copartnership, entered into a contract with plaintiff on November 8, 1912, to plaster and decorate the Pro-Cathedral, then in process of construction in the city of Minneapolis, and to furnish all the material and perform all the labor required therefor, for the sum of $20,868 and gave a bond with the Maryland Casualty Co. as surety to secure the faithful performance of the contract. They agreed to complete the work within nine months from the date of the contract, and, at the end of each 30 day period, were to be paid 90 per cent of the architect's estimate of the value of the materials furnished and work performed during such period. They made preparations for the work during the winter and began the actual work about April 1, 1913, and proceeded therewith until the latter part of September, 1913, and during this period received payments amounting in the aggregate to the sum of $15,500. They were unable to pay their workmen the wages which became due and payable on September 26, and the workmen quit. The contractors requested plaintiff to advance sufficient funds to meet this payroll. Plaintiff declined to do so, but promised the workmen to see them paid and they returned to work. On October 1, the sum of $1,800 became due the contractors under the estimate of the architect. The contractors presented their payroll, with a written order directing plaintiff to pay the same to the workmen. Plaintiff expected to receive its funds from an insurance company with which it had arranged for a loan secured by a mortgage on the

property. On October 2, the insurance company notified plaintiff that a lien for lumber had been filed against the property which must be removed before the money would be paid over. On October 3, pursuant to a written order from the contractors, plaintiff paid this lien in the sum of $893 and also paid the payroll in the sum of $368.67. On October 4, plaintiff again applied to the insurance company for its money and was again refused, for the reason that another lien had been filed for lime and cement. Upon an order from the contractors, plaintiff advanced the money and paid this lien in the sum of $2,507.80, on October 4. As soon as plaintiff could find the managing partner of the contractors, and on October 5 or 6 plaintiff requested him to furnish a list of all lienable claims. This list was furnished on October 8, and on October 9 plaintiff mailed a written notice informing the surety company of the situation. The contractors informed plaintiff that they were unable to pay the claims then due or to proceed with the work under the contract, and after the surety had waived its right to complete the contract, an arrangement was made, whereby the contractors acted as superintendents for plaintiff during the remainder of the work and plaintiff paid for the labor and material. The work was completed under and in accordance with this arrangement. The contractors superintended the work, and audited and approved all claims and expenditures, and gave written orders to plaintiff to pay the same, and thereupon plaintiff paid them. No payments were made by plaintiff except upon such written orders. At the completion of the work, plaintiff had paid a considerable amount over and above the contract price, and subsequently brought this action against the contractors and their surety to recover the excess so paid. At the conclusion of the trial, the court directed a verdict for plaintiff, and thereafter the contractors and the surety made separate motions for a new trial, and took separate appeals from the orders denying their respective motions.

1. The contract provided that, whenever the architect should certify that the contractors were not furnishing proper and sufficient workmen or materials, or were not prosecuting the work with proper diligence, and such default should continue for three days after

written notice thereof, plaintiff should have the right to furnish such labor and materials and deduct the cost thereof from the contract price. The contract further provided that, in case the architect should certify that the default was sufficient ground therefor, plaintiff should have the right to terminate the employment of the contractors, and to take possession of the work and complete it at the expense of the contractors. The contract also provided that the amount to be allowed plaintiff, for expenditures under the above provisions, should be determined by the architect, and that such determination should be conclusive upon the parties.

Defendants contend that plaintiff cannot maintain this action, for the reason that the architect never certified that the contractors were in default, and never determined the amount of the expense incurred by plaintiff in completing the contract. We cannot sustain this contention. If plaintiff had completed the work, or taken part in completing it, against the will of the contractors, and solely by virtue of the power conferred by the contract, the rule invoked by defendants would be applicable, but such is not this case. The contractors themselves informed plaintiff they were unable to go on with the work, and that such was the fact is not questioned. There was never any controversy or dispute between the parties for the architect to settle. The contractors conceded that they were financially unable to proceed further under the contract, but wished to remain upon the work and to superintend it until completed, because they thought that remaining in charge of the work would enable them to overcome, in part, the unfavorable effect which inability to complete the contract would have upon their prospects for securing similar work in the future. Plaintiff consented and, by agreement then made, they remained and supervised and directed the remainder of the work and plaintiff bore the entire expense necessary to complete it. This was in effect an abandonment of the contract by the contractors. The expenditures made by plaintiff in completing the contract were determined, approved and certified to by the contractors themselves at the time they were made, and the amount necessarily so expended is not only admitted but has never been in dispute. All the questions which the contract provided that the

architect should determine were determined and decided by the parties themselves, and submitting them to the architect would have been merely an empty form.   There was no controversy for him to decide.   The contract is a form in general use which has been considered and construed by various courts, and it is well settled that the provisions in question do not apply where the contract has been abandoned, or where there are no unsettled questions for the architect to determine.   Smith v. Jewell, 104 Md. 269, 65 Atl. 6; George A. Fuller Co. v. Doyle, 87 Fed. 687; Heidbrink v. Schaffner, 147 Mo. App. 632, 127 S. W. 418; Fraenkel v. Friedmann, 199 N. Y. 351, 92 N. E. 666.

2.  The surety company contends that it was not seasonably notified of the default of the contractors.   The bond provided:

"This bond is executed upon the following express condition: (1) That said surety shall be notified in writing of any act on the part of said principals or their agents or employees, which shall involve a loss for which said surety is responsible hereunder immediately after the occurrence of such act shall have come to the knowledge of the duly authorized representative of the obligee."

Although plaintiff sought to communicate with local representatives of the surety company before that date, no written notice was sent to the company until October 9, 1913.

The contract provided that the work should be completed within nine months from November 8, 1912, and the company insists that notice of its noncompletion should have been given at the expiration of this period of nine months.   In the original complaint, plaintiff demanded damages for failure to perform within the prescribed time, but by an amended complaint eliminated all claim for such damages. It has already been determined that, under such a provision as above quoted, the obligee in the bond may waive failure to complete the contract within the time specified, and, if he has done so by making no claim for damages on account of such default, the failure to give notice thereof does not affect the liability of the surety for other and subsequent defaults.   Lakeside Land Co. v. Empire State Surety Co. 105 Minn. 213, 117 N. W. 431; Fitger Brewing Co. v. American Bonding Co. of Baltimore, 115 Minn. 78, 131 N. W.

1067; Fitger Brewing Co. v. American Bonding Co. of Baltimore, 127 Minn. 330, 149 N. W. 539.

The contract also provided:

"If at any time during the progress of said work, or after its completion there shall be legal evidence of any lien or claim for which the Owner may be liable and which is properly chargeable to the Contractor, the Owner shall have the right to retain out of any payment then due or thereafter to become due to said Contractor an amount sufficient to completely indemnify said Owner against such lien or claim or any loss thereunder. Should there prove to be any such claims, liens, charge or incumbrance for which the Contractor should have been liable after all payments have been made, the Contractor shall refund to the Owner all moneys that may be required to be paid by said Owner in discharging any such lien, charge, claim or incumbrance."

The contractors were unable to meet a payroll which became due September 26, and plaintiff became aware of that fact between that date and October 1, and also learned, on October 2, that a lien for lumber had been filed against the property. On October 1, the sum of $1,800 became due and payable from plaintiff to the contractors, and by their directions plaintiff paid the above two items out of that fund on October 3. As the contractors promptly caused these claims to be satisfied and discharged out of their own funds, no loss resulted to plaintiff or the surety company, and these claims did not show the contractors to be in default within the meaning of the provision quoted from the bond.

On October 4, plaintiff learned that another lien had been filed against the property, and at once took steps to ascertain the amount of the claims outstanding against the contractors, and whether they were in position to take care of them and complete the contract. Plaintiff secured this information on October 8. Plaintiff had previously made unsuccessful attempts to communicate with parties whom it supposed were local representatives of the surety company, and, on October 9, mailed notice to the company itself at its home office in Baltimore. The provision for immediate notice does not

require instant notice, but notice "within a reasonable time in view of all the circumstances." George A. Hormel & Co. v. American Bonding Co. of Baltimore, 112 Minn. 288, 128 N. W. 12, 33 L.R.A. (N.S.) 513. No claim is made that there was any change in the situation between October 4 and the date on which the surety company notified plaintiff that it waived its right to complete the work, nor that the surety company has been prejudiced in any respect by the delay of five days in giving the notice; and the trial court correctly held, as a matter of law, that, under the circumstances, the surety had not been released by the delay.

3. The bond provided that any suit thereon must be brought within six months after breach of the contract, and defendant contends that the present suit was not brought within such period. The breach referred to is one which gives a right of action upon the bond, and the limitation did not begin to run until a right to sue upon the bond had accrued. Fitger Brewing Co. v. American Bonding Co. of Baltimore, 115 Minn. 78, 131 N. W. 1067; Fitger Brewing Co. v. American Bonding Co. of Baltimore, 127 Minn. 330, 149 N. W. 539. This suit was commenced on April 3, 1914. Plaintiff had no cause of action until it paid the lien for lime and cement on October 4, 1913, and, if we concede that the limitation then began to run, the suit was still brought within the prescribed time.

4. The surety company contends that the claim for lumber paid by plaintiff on October 3 was not a lienable claim, and for that reason should not have been paid by plaintiff. The lumber was purchased and used for the purpose of constructing scaffolding for the use of the workmen, and was not intended to, and did not, become a part of the building nor the property of plaintiff, but remained the property of the contractors, who subsequently removed it and appropriated it to other uses. It is doubtful whether a lien could be sustained for this lumber, but a decision upon that question is not necessary. Plaintiff did not advance the money to make this payment. It was made by order of the contractors out of funds in plaintiff's hands belonging to them, and which they had the right to apply to that purpose. The contractors had earned the

money; it was past due; and plaintiff infringed no right of the surety by paying it upon an order given by them. If the contractors had not been entitled to demand and receive the money, but plaintiff had advanced it and were seeking to be credited with the amount of such advancement, a different question would be presented.

5. Defendants contend that the court erred in directing a verdict for plaintiff over their objection based on chapter 245, p. 336, Laws 1913. This statute provided that, if a motion was made for a directed verdict and the adverse party objected thereto, the motion should be denied, and the issues upon which any evidence had been taken should be submitted to the jury, but empowered the court to render judgment notwithstanding the verdict after it had been received. This statute is now repealed, but was in force at the trial of the action. At the close of the evidence defendants made a motion for a directed verdict in their favor which was denied. Thereupon plaintiff made a motion for a directed verdict in plaintiff's favor which was granted against defendants' objection. Plaintiff argues that defendants, by making their motion, conceded that only questions of law were involved, and thereby waived their right to insist that the case be submitted to the jury. We cannot sustain this contention. The admissions necessarily implied by making the motion for a directed verdict were limited to the purposes of the motion, and, after it had been denied, defendants had the same right to insist upon submitting issues to the jury as if they had not made such motion. Stauff v. Bingenheimer, 94 Minn. 309, 102 N. W. 694. It is also argued that, as there was no conflict in the evidence, the only question involved was whether, upon the admitted facts, plaintiff was entitled to recover as a matter of law, and that there were no issues for submission to the jury. This would be true in practically all cases in which the court would be justified in directing a verdict. The court directs a verdict for the reason that, upon the admitted facts, the plaintiff is, or is not, entitled to a verdict as a matter of law. To exclude such cases from the operation of the statute would practically nullify it. Directing a verdict over objection was a violation of this statute, and the question presented is

whether a failure to obey the statute must necessarily result in a mistrial. This statute did not work very satisfactorily and has been repealed, hence this decision is not important as a guide for the future. The trend of the courts, and of legislation, is to disregard technicalities and avoid useless formalities and unnecessary expense, so far as this may be done without trenching upon the substantial rights of the parties concerned. It has become firmly established that this court will not reverse a trial court for an error which this court can see did not change the result nor cause any substantial prejudice to the rights of the complaining party. In the present case all the facts are undisputed and the only controversy is as to the conclusions to be drawn therefrom. The court should have submitted the case to the jury in obedience to the statute, but, if the court had done so and the jury had retured a verdict for defendant, it would have been the duty of the court to have ordered judgment for plaintiff notwithstanding such verdict. As in any event the final result must have been the same as that now reached, the error in directing a verdict was without prejudice. If we hold that a failure to follow the procedure prescribed by the statute necessarily requires a new trial, it means that the parties must be subjected to the delay, trouble and expense of such new trial, although it be clearly shown that the final result cannot be changed thereby. We think that the legislature did not intend to impose needless burdens upon litigants, and hold that, while the statute prescribed a rule of procedure which should have been observed, the failure to observe it, although error, was without prejudice to any substantial right of defendants and does not justify a reversal.

6. Defendants challenge certain rulings of the court in respect to the admission and exclusion of evidence, but the objections urged are not well founded.

The orders appealed from are affirmed.