**CITY OF DULUTH, Respondent,**

v.

**FOND DU LAC BAND OF LAKE SUPERIOR CHIPPEWA, Appellant.**

No. A12–1324.

Supreme Court of Minnesota.

March 12, 2014.

---

1. This was as of 2008. As of his second petition for reinstatement, Mose had passed the bar examination three times.

Gunnar B. Johnson, Duluth City Attorney, M. Alison Lutterman, Deputy City Attorney, Nathan N. LaCoursiere, Assistant City Attorney, Duluth, MN, for respondent.

Henry M. Buffalo Jr., Buffalo Law Office, P.C., Hastings, MN; and Douglas B.L. Endreson, Donald J. Simon, Anne D. Noto, Sonosky, Chambers, Sachse, Endreson & Perry, LLP, Washington, D.C., for appellant.

Mark A. Anderson, Jacobson, Magnuson, Anderson & Halloran, P.C., Saint Paul, MN, for amici curiae Bois Forte Band of Chippewa, Grand Portage Band of Lake Superior Chippewa, Lower Sioux Indian Community, Corporate Commission of the Mille Lacs Band of Ojibwe, and Prairie Island Indian Community.

## OPINION

PAGE, Justice.

In April 2012, respondent City of Duluth (the City) commenced an action in state district court against appellant Fond du Lac Band of Lake Superior Chippewa (the Band), alleging breach of a 1986 contract and seeking injunctive relief. The district court dismissed the lawsuit after concluding that it lacked subject matter jurisdiction because the Band had only consented to suit in federal court in a 1994 agreement amending the 1986 contract. The court of appeals reversed after concluding that Minnesota courts have subject matter jurisdiction over the dispute. We granted review and now reverse the court of appeals' decision and reinstate the district court's judgment for the Band.

In 1986, the Band and the City entered into several agreements (collectively, the 1986 Agreements) establishing a joint venture to operate gaming activities in downtown Duluth. The 1986 Agreements included the Commission Agreement and the Business Lease Agreement. The Commission Agreement created the Duluth–Fond du Lac Economic Development Commission (the Commission), which was created, among other reasons, to own and operate the Fond–du–Luth Casino (the Casino). The Commission Agreement also gave the City a share in Casino profits, and provided that revenue from Commission activities would be split among the Band, the City, and the Commission. With the City's assistance, the Band acquired land in downtown Duluth (the Casino plot) and the appurtenant building with plans to open the Casino. The Band successfully petitioned the Secretary of the Interior to place the Casino plot into trust under 25 U.S.C. § 465 (2012), and to have the trust land declared part of the Band's under 25 U.S.C. § 467 (2012). The Band agreed to lease the Casino to the Commission, consistent with the terms of the Business Lease Agreement.

Pursuant to section 10 of the Commission Agreement, the Band and the City agreed that the creation of any additional Indian Country [1] within Duluth would require the City's approval and consent. Under the Commission Agreement, "[t]he City, in its sole discretion, shall have the right to disapprove the creation of additional Indian Country." That provision also specified that the Band "shall not create any additional Indian Country … unless [the City] approves."

Section 19 of the Commission Agreement created a waiver of the Band's sovereign immunity, and the Band consented to suit in either Minnesota state court or in federal court. Specifically, section 19 provides:

> [The Band] consents to be sued in any Minnesota state court or in federal court in connection with this Agreement or any agreement executed and delivered pursuant to this Agreement or any activity undertaken by [the Band] pursuant to this Agreement and does hereby waive forever any and all immunity … from any suits or claims … arising from this Agreement or any activity undertaken by the Commission under this Agreement.

---

1. "Indian Country" is defined in section 3a of the Commission Agreement as:

    [A]ll land located within the corporate limits of the City of Duluth which is transferred by [the Band] to the United States of America to hold in trust for [the Band] pursuant to 25 U.S.C. § 465, and which is made part of the Fond du Lac Indian Reservation pursuant to 25 U.S.C. § 467, and all buildings and structures located on such land.

Two years after the 1986 Agreements were executed, Congress enacted the 1988 Indian Gaming Regulatory Act (IGRA) (codified as amended at 25 U.S.C. §§ 2701–2721 (2012)). Congress vested the National Indian Gaming Commission (the NIGC), an independent agency of the Department of the Interior, with the authority to enforce and interpret IGRA. 25 U.S.C. § 2702(3). In 1993, the NIGC determined that the 1986 Agreements violated IGRA's "sole proprietary interest" requirement, which requires Indian tribes to have the sole proprietary interest and responsibility for the conduct of any gaming activity on the tribes' Indian lands. *See* 25 U.S.C. § 2710(b)(2)(A). Rather than initiating an enforcement action, the NIGC allowed the Band and the City to negotiate new agreements, which they did.

To conform with IGRA, the Band and the City restructured their relationship by creating a series of new agreements and amendments to the 1986 Agreements: the 1994 Umbrella Agreement and its exhibits (collectively, the 1994 Agreements). The 1994 Agreements provided that the Band was the sole owner and operator of the Casino. The Agreements also provided for the Commission to sublease its 1986 leasehold to the Band and to assign rights, to the extent that the Commission held them under the 1986 Agreements, "to conduct gaming activities on the Sublease space," back to the Band. The NIGC approved the 1994 Agreements.

Included in the 1994 Agreements was a limited waiver of sovereign immunity. That provision, set out in section 9 of the 1994 Agreements, limits the adjudication of disputes arising out of the 1994 Agreements to the United States District Court for the District of Minnesota. Section 9 reads:

> [The Band] consents to be sued by the City in the United States District Court for the District of Minnesota for any claim arising out of this Agreement or any Exhibit thereto, or arising out of any activity taken pursuant to such agreements, and does hereby waive forever any and all immunity . . . from any suits or claims . . . arising from this Agreement or any Exhibit thereto, or arising out of any activity taken pursuant to such agreements.

A choice-of-law provision, section 10, states that the parties "choose that this Agreement, and all Exhibits thereto, shall be governed by and construed in accordance with the provisions of federal law as applied by" the federal court. In section 11, the parties further agreed that "the State of Minnesota courts and the Tribal courts will not have jurisdiction to hear disputes between the City and the Band arising under this Agreement" and that "[a]ll such matters shall be heard in the United States District Court for the District of Minnesota."

The 1994 Agreements also incorporate amendments to the 1986 Agreements as Exhibits. Exhibit C abrogates portions of the 1986 Agreements by identifying sections to be deleted or replaced by new text. Exhibit C also includes a clause that makes dormant several provisions of the 1986 Commission Agreement. The dormancy clause provides:

> Sections 1 through 4, 7(a), 9 through 13 and 15 through 38 of the [1986 Agreements], insofar as they pertain to gaming activities and Ancillary Businesses at the Sublease space, shall be dormant and of no force or effect for so long as the Sublease is in effect.

Among the provisions implicated by the dormancy clause is section 19 of the 1986 Agreements: the waiver of sovereign immunity provision.

In December 2010, the Band acquired a plot of land abutting the Casino plot (the

Carter Hotel plot). The Band sought to have the Carter Hotel plot placed in trust under 25 U.S.C. § 465. The Band did not, however, seek the City's approval to place the Carter Hotel plot in trust, as required by the 1986 Agreements. The dispute in this case arose in December 2011, when the Department of the Interior notified the City that the Band had filed an application to place the Carter Hotel plot in trust.

Believing that the Band was in violation of the requirement in the 1986 Agreements that the Band seek approval from the City before creating any additional Indian Country, the City commenced this action in St. Louis County District Court. The City sought a court order requiring the Band to withdraw its trust application. The district court dismissed the City's complaint for lack of subject matter jurisdiction and lack of ripeness. The district court reasoned that the dormancy clause in the 1994 Agreements potentially rendered the Band's 1986 consent to suit in state court ineffective. Therefore, the district court concluded that the issue it had to decide was "clearly a dispute over the interpretation" of the 1994 dormancy clause. Because determining the effect of the dormancy clause would require interpretation of the 1994 Agreements, which give exclusive jurisdiction to Minnesota federal courts, the district court concluded that the issue "is appropriately reserved for federal court determination."

The City appealed, and the court of appeals reversed. *City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, No. A12–1324, 2013 WL 1500884 (Minn. App. Apr. 15, 2013). The court of appeals concluded that the "district court has authority to decide legal issues necessary to determine whether it has jurisdiction."

*Id.* at *4 (citing *J.E.B. v. Danks*, 785 N.W.2d 741, 747 (Minn.2010)). The court of appeals went on to conclude that the 1994 Agreements "do not control or address the [Carter Hotel plot] trust application which is at the heart of this litigation" and that the 1994 Umbrella Agreement "does not prevent the district court from interpreting the 1994 agreements to determine their impact on the [1986] waiver of sovereign immunity." *Id.* The court of appeals then proceeded to interpret the dormancy clause in the 1994 Agreements. The court of appeals ultimately concluded that the 1994 dormancy clause does not render the waiver of immunity in the 1986 Agreements ineffective because the Carter Hotel plot is not "at the Sublease space," and therefore, Minnesota courts have jurisdiction over the City's cause of action.[2] *Id.* The court of appeals remanded to the district court with instructions to determine whether the City is entitled to injunctive relief. *Id.* at *5. We granted review, and we now reverse the court of appeals' decision.

## I.

We must first determine whether Minnesota state courts have subject matter jurisdiction over the dispute between the Band and the City. Subject matter jurisdiction is a question of law that we review de novo. *Schatz v. Interfaith Care Ctr.*, 811 N.W.2d 643, 653 (Minn.2012). Contract interpretation is also a question of law that we review de novo. *Halla Nursery, Inc. v. City of Chanhassen*, 781 N.W.2d 880, 884 (Minn.2010). When contractual language is clear and unambiguous, we "enforce the agreement of the parties as expressed in the language of the contract." *Dykes v. Sukup Mfg. Co.*, 781

---

**2.** The court of appeals also concluded that the City's cause of action was ripe. *Id.* at *4–5.

That issue is not before us in this appeal.

N.W.2d 578, 582 (Minn.2010). We assign unambiguous contract language its plain meaning. *Savela v. City of Duluth,* 806 N.W.2d 793, 796–97 (Minn.2011).

The parties disagree as to whether Minnesota state courts have jurisdiction to resolve their dispute. The Band waived its immunity to suit in state court in the 1986 Agreements, but not in the 1994 Agreements. The City asserts that Minnesota state courts have inherent authority to make jurisdictional determinations, and therefore may interpret the parties' agreements to determine the existence of state court jurisdiction. The City further argues both that we may construe the 1994 dormancy clause to determine whether the 1986 waiver of immunity provision remains applicable, and that the 1986 waiver applies to the dispute in this case. According to the City, the court of appeals correctly concluded that the Band waived its sovereign immunity to suit in state court in the 1986 waiver of immunity provision. The City contends that the Band's 1986 waiver of immunity controls this dispute—a dispute, the City maintains, that has no relation to the 1994 Agreements, including the 1994 waiver of immunity clause.

The Band argues that because the 1994 Agreements modified the 1986 Agreements, including the waiver of immunity provision, and because the 1994 Agreements limit the Band's waiver of immunity to suit in the United States District Court for the District of Minnesota, the state courts of Minnesota lack subject matter jurisdiction over the City's breach of contract claims. Thus, the Band argues that our jurisdiction is limited to reviewing evidence related to the Band's jurisdictional defense to determine the limits of our jurisdiction.

We agree with the City and with the court of appeals that we have jurisdiction to determine the existence of our own subject matter jurisdiction. *City of Duluth,* 2013 WL 1500884, at *4. "A court has the inherent power to determine if it has subject matter jurisdiction of a proceeding before it." *In re Florance,* 360 N.W.2d 626, 629 n. 1 (Minn.1985). Yet the City's argument regarding construction of the parties' agreements fails, because whether the 1986 waiver of immunity provision remains in force requires interpretation of the 1994 Agreements. The Band is immune to suit in state court, unless it waives its sovereign immunity. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) (noting that recognized Indian tribes are sovereign powers, immune from suit to the extent that Congress has not abrogated that immunity). The Band did not waive its immunity to suit in state court in the 1994 Agreements, which modify the 1986 Agreements. Sections 9 and 11 of the 1994 Agreements clearly and unequivocally provide that interpretation of the 1994 Agreements is exclusively the province of the federal district court and that state courts do not have jurisdiction to hear disputes arising under the 1994 Agreements.

We conclude that deciding the issue of whether the Band breached the 1986 Agreements requires interpretation of the 1994 Agreements—a matter vested in the federal courts. Therefore, we lack jurisdiction over this dispute.

II.

The underlying dispute in this case is whether the Band breached the 1986 Agreements by seeking to place the Carter Hotel plot into trust without the City's approval, as required by section 10 of the 1986 Commission Agreement. Having determined that we lack jurisdiction to proceed, we will not reach that issue. We do

not have jurisdiction to consider whether the 1994 dormancy clause renders the Band's 1986 waiver of sovereign immunity provision "dormant and of no force or effect" because the Band has not waived its sovereign immunity in Minnesota state courts with respect to disputes arising under the 1994 Agreements. Thus, questions of the application of the dormancy clause can be resolved only by the United States District Court for the District of Minnesota, as expressed in the 1994 limited waiver of sovereign immunity provision.

Reversed.

