*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0658**

Tammy Marie Salisbury, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed November 30, 2015
Affirmed
Schellhas, Judge**

Ramsey County District Court
File No. 62-CV-14-5788

Paul P. Sarratori, Mesenbourg & Sarratori Law Offices, P.A., Coon Rapids, Minnesota (for appellant)

Lori Swanson, Attorney General, Peter D. Magnuson, Assistant Attorney General, St. Paul, Minnesota (for respondent)

        Considered and decided by Cleary, Chief Judge; Schellhas, Judge; and Klaphake,

Judge.[*]

_____

[*]  Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant asks us to reverse the dismissal of her second petition for judicial review of the implied-consent revocation of her driver's license. We affirm.

## FACTS

Appellant Tammy Marie Salisbury was arrested for driving while impaired on November 4, 2012, and received a notice and order of revocation informing her that her driver's license would be revoked for 365 days starting November 11. Salisbury retained counsel, who filed a petition for judicial review of the revocation on December 7—more than 30 days following Salisbury's receipt of the November 4 notice and order. The December 7 petition "demand[ed] that, pending formal hearing . . . , [Salisbury] receive a temporary reinstatement of [her] driving privileges." On January 28, 2013, the district court issued an order acknowledging Salisbury's demand and staying the balance of the revocation "pending resolution of the criminal and implied consent hearings." The following day, the Minnesota Department of Public Safety (DPS) reinstated Salisbury's driving privileges. On October 1, the State of Minnesota and Salisbury resolved the criminal case arising from the November 4, 2012 incident. After at least one continuance, an implied-consent hearing was set for July 14, 2014.

On July 10, 2014, respondent Minnesota Commissioner of Public Safety filed a motion to dismiss Salisbury's December 7, 2012 petition for judicial review of the revocation, arguing that the district court lacked jurisdiction to consider the petition due

to its untimely filing.[1] On August 5, the court issued an order granting the commissioner's motion to dismiss. Salisbury did not appeal that order. On August 8, DPS mailed to Salisbury a notice and order of revocation informing her that her driver's license would be revoked based on the November 4, 2012 incident. The notice and order indicated that (1) the revocation would be effective August 14, (2) the revocation would continue for 276 days, and (3) "[Salisbury] ha[d] the right to petition for a judicial review" in accordance with the statutory requirements for such a petition. Salisbury filed a second petition for judicial review of the revocation on August 19.

On October 2, 2014, the commissioner moved to dismiss Salisbury's August 19, 2014 petition for judicial review of the revocation, arguing that the district court lacked jurisdiction to consider the petition. On October 6, the court conducted a hearing and denied the commissioner's motion to dismiss Salisbury's August 19 petition. On December 1, the court conducted a hearing at which the commissioner orally moved to dismiss the August 19 petition for lack of jurisdiction and the court scheduled another hearing. On December 4, the commissioner filed a "RENEWED MOTION" to dismiss Salisbury's August 19 petition for lack of jurisdiction. On February 11, the court conducted a hearing at which Salisbury's counsel appeared; the commissioner waived its appearance; and the court stated that it was ruling against Salisbury, adopted the

---

[1] We note with disapproval that the commissioner failed to challenge the court's jurisdiction until more than 19 months after Salisbury's December 7 petition was filed untimely, which precipitated the district court's staying the balance of Salisbury's license revocation "pending resolution of the criminal and implied consent hearings."

commissioner's position as outlined in its written submissions, and issued an order sustaining the revocation.

This appeal follows.

**D E C I S I O N**

One has a statutory right to judicial review of an order revoking her driver's license if she files a petition with the district court "[w]ithin 30 days following receipt of a notice and order of revocation." *See* Minn. Stat. § 169A.53, subd. 2(a) (2012). "A failure to file a petition for judicial review within the 30-day statutory period deprives the district court of jurisdiction to hear the petition." *Thole v. Comm'r of Pub. Safety*, 831 N.W.2d 17, 19 (Minn. App. 2013), *review denied* (Minn. July 16, 2013).

"Defects in subject-matter jurisdiction may be raised at any time and cannot be waived." *Williams v. Smith*, 820 N.W.2d 807, 813 (Minn. 2012) (quotation omitted). Moreover, "parties cannot by their actions . . . confer jurisdiction on the court." *Davidner v. Davidner*, 304 Minn. 491, 493, 232 N.W.2d 5, 7 (1975). "Subject matter jurisdiction is a question of law that [appellate courts] review de novo." *City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 843 N.W.2d 577, 581 (Minn. 2014). Likewise, "[s]tatutory interpretation is a question of law that [appellate courts] review de novo." *Engfer v. Gen. Dynamics Advanced Info. Sys., Inc.*, 869 N.W.2d 295, 300 (Minn. 2015).

Here, Salisbury concedes that she did not file a petition for judicial review of the revocation within 30 days following her receipt of the November 4, 2012 notice and order of revocation. The district court therefore lacked jurisdiction to consider Salisbury's December 7, 2012 petition for judicial review. *See Thole*, 831 N.W.2d at 19. Yet

4

Salisbury argues that her receipt of the August 8, 2014 notice and order of revocation triggered a new 30-day period during which the court acquired jurisdiction to consider Salisbury's August 19, 2014 petition for judicial review. In support of her argument, Salisbury points to the following language in the August 8 notice and order of revocation:

> YOU HAVE THE RIGHT TO PETITION FOR A JUDICIAL REVIEW. PETITIONS MUST BE FILED IN WRITING AS OUTLINED IN MINNESOTA STATUTES, SECTIONS 169A.53 SUBD.2, AND 169A.52, SUBD.6, IN THE COUNTY IN WHICH THE INCIDENT OCCURRED. THE PETITION MUST BE FILED WITH THE COURT WITHIN 33 DAYS AFTER THE MAILING DATE OF THIS NOTICE AND ORDER OF REVOCATION AS INDICATED ON THIS NOTICE. IF YOU DO NOT PETITION FOR JUDICIAL REVIEW OF THE IMPLIED CONSENT REVOCATION EXACTLY AS PRESCRIBED IN MINNESOTA STATUTES, YOU LOSE THE RIGHT TO JUDICIAL REVIEW OF THE IMPLIED CONSENT REVOCATION.

But DPS had no ability to confer jurisdiction upon the district court by stating or suggesting to Salisbury that she had a right to judicial review. *See Davidner*, 304 Minn. at 493, 232 N.W.2d at 7. Although we question DPS's inclusion of potentially misleading language in its August 8 notice and order, we reject Salisbury's argument that the second notice conferred jurisdiction upon the court to review her initial license revocation.

Salisbury also attempts to rely on the right-to-review section of the Minnesota Implied Consent Law, Minn. Stat. §§ 169A.50–.53 (2012). Again, that section provides that "[w]ithin 30 days following receipt of a notice and order of revocation . . . pursuant to section 169A.52 (revocation of license for test failure or refusal), a person may petition the court for review." Minn. Stat. § 169A.53, subd. 2(a). Because Salisbury received a

5

second, self-styled notice and order of revocation based on the November 4, 2012 incident, she argues that the plain language of the statute provides her with a second right to judicial review of that revocation.

But as noted by the commissioner, the revocation discussed in the August 8, 2014 notice and order is not a new revocation; that revocation is no more than a reinstatement of the balance of the revocation originally imposed by the November 4, 2012 notice and order, which revocation was stayed—in accordance with Salisbury's own demand— pending resolution of the criminal case and the implied-consent matter. Any right to judicial review of the revocation discussed in the August 8 notice and order necessarily is limited to review of the reinstatement of the revocation, rather than review of the original revocation. *Cf.* Minn. Stat. § 169A.53, subd. 2(c) (providing that district "court may order a *stay* of the balance of the revocation . . . if the [implied-consent] hearing has not been conducted within 60 days after filing of the petition upon terms the court deems proper" (emphasis added)); *Black's Law Dictionary* 1548 (9th ed. 2009) (defining "stay" as "[t]he *postponement* or *halting* of a proceeding, judgment, or the like" (emphasis added)). Salisbury's August 19, 2014 petition for judicial review does not challenge, for example, the number of days remaining on the reinstated revocation; rather, the August 19 petition challenges the factual and legal bases of the original revocation. In fact, Salisbury's August 19 petition mirrors her untimely December 7, 2012 petition almost word for word.

We conclude that the district court was deprived of jurisdiction to resolve Salisbury's challenge to the factual and legal bases of the original revocation as soon as Salisbury failed to assert that challenge within 30 days of her receipt of the November 4,

2012 notice and order of revocation. The August 2014 reinstatement of the revocation did nothing to change that. The court therefore lacked jurisdiction to consider Salisbury's August 19, 2014 petition for judicial review.

Salisbury further argues that the district court erred by granting the commissioner's motion to dismiss Salisbury's August 19, 2014 petition for judicial review because the court already had denied the motion to dismiss at the October 6, 2014 hearing; the commissioner neither requested a motion for reconsideration nor appeared at the February 11, 2014 hearing on the motion to dismiss; and the court did not allow Salisbury's counsel to present further argument at the February 11 hearing. Salisbury apparently urges us to reverse the district court's order sustaining the revocation because of these purported procedural defects in the proceedings that culminated in the order.

But appellate courts will not reverse an order due to the district court's technical departure from procedural rules, so long as the questions involved in the matter were rightly determined and the parties received due process of law. *See Gillette-Herzog Mfg. Co. v. Ashton*, 55 Minn. 75, 77, 56 N.W. 576, 576–77 (1893) ("[I]n its discretion, the court saw fit to suspend the[] operation [of rules regarding motion procedure] in this particular instance, and dispose of the application on its merits. It was competent for the court to do this, and as the case was rightly determined on the merits, after due notice to the plaintiff and opportunity to be heard, the order appealed from should be affirmed." (citation omitted)); *see also Church of the Immaculate Conception v. Curtis*, 130 Minn. 111, 120, 153 N.W. 259, 262 (1915) (stating that "[i]t has become firmly established that [an appellate] court will not reverse a trial court for an error which th[e appellate] court

7

can see did not change the result nor cause any substantial prejudice to the rights of the complaining party" and holding that, "while the statute prescribed a rule of procedure which should have been observed, the failure to observe it, although error, was without prejudice to any substantial right of defendants and does not justify a reversal"); *cf.* Minn. R. Civ. P. 61 ("[N]o error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for . . . disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

Here, Salisbury does not make so much as a conclusory assertion—much less a reasoned argument supported by authority—that any purported procedural defect affected her substantial rights. The record shows that Salisbury's counsel argued against dismissal at the October 6, 2014 hearing and that the district court read Salisbury's written opposition to dismissal. Indeed, because the court lacked jurisdiction to consider Salisbury's August 19, 2014 petition for judicial review and "[d]efects in subject-matter jurisdiction may be raised at any time and cannot be waived," *see Williams*, 820 N.W.2d at 813 (quotation omitted), Salisbury *cannot* identify a substantial right that was affected by the purported procedural defects in the proceedings below. As a result, any procedural error in the district court's conduct of those proceedings does not warrant reversal of the order sustaining the revocation.

**Affirmed.**

8