## AMERICAN BONDING & TRUST CO. et al. v. GIBSON COUNTY.

(Circuit Court of Appeals, Sixth Circuit.  February 11, 1904.)

### No. 1,219.

1. BUILDING CONTRACT—TERMINATION—COMPLETION — DAMAGES — CERTIFICATE OF ARCHITECT.

A building contract provided a penalty for delay, authorized the owner to terminate it on failure of the contractor to proceed with diligence, etc., on certificate of the architect, and declared that if terminated and completed by the owner the excess paid by the owner to other contractors over the contract price should be paid by the contractor and his surety, and that such expense either for furnishing materials or for finishing the work, and any damage incurred through such default, should be audited and certified by the architect whose certificate should be conclusive on the parties.  The contractor did all the work on the building, except that covered by the final payment, when on a certificate of the architect his work was discontinued and the building was completed by the owner.  *Held*, that an action to recover from the contractor and his surety per diem damages for delay, and an excess of expenses over the contract price, was an action for damages under the contract resulting from a violation of its provisions, and hence the owner was not entitled to recover in the absence of proof that the architect had audited and certified the expense and damages incurred and issued a certificate therefor, no reason being given for the omission.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

Dufour & Dufour and Deason, Rankin & Elder, for plaintiffs in error.

Taylor & Biggs, Sp'l Hill, and Harwood & Tyree, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, J.  This suit was brought by Gibson county, Tenn., against Hugger & Winston, as contractors, and the American Bonding & Trust Company, as surety, upon a contract and bond for the erection of a courthouse.  Recovery was sought for the expense incurred by the county over the contract price in completing the courthouse, and damages resulting in the delay, the employment of the contractors having been terminated under a stipulation of the contract.  Pleas, both

general and special, were filed by each of the defendants. The case was submitted to the jury, and, under instructions of the court, a verdict and judgment for $4,277.00 rendered in favor of the plaintiff. The case is here upon a large number of assignments of error, of which it will be necessary to consider but one.

The contract price for the building was $30,485.00, payable in installments at times to be determined by the progress of the work. The work was done under the supervision of architects, and all payments made upon their written certificates. The contract was made April 1, 1899, and the building was to be completed on April 1, 1900, in default of which the contractors were to pay to the county $5 a day for each day the building should remain unfinished. Failure of the contractors to prosecute the work with promptness and diligence was covered by the following clause of the contract:

"Art. V. Should the contractors at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality; or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the architects, the owners shall be at liberty, after three days' written notice to the contractors, to provide any such labor or material, and to deduct the cost thereof from any money then due or thereafter to become due to the contractors under this contract; and if the architects shall certify that such refusal, neglect or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractors for the said work and to enter upon the premises and take possession, for the purpose of completing the work comprehended under this contract, of all materials, tools and appliances thereon and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractors he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractors, but if such expense shall exceed such unpaid balance, the contractors shall pay the difference to the owner. The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default shall be audited and certified by the architects, whose certificate thereof shall be conclusive upon the parties."

Complaint of the slow and unsatisfactory character of the work was made in May and June, 1900, and on August 2, 1900, the architects (using the language of the above clause) notified the building committee of the county that the contractors were refusing and neglecting to supply a sufficiency of workmen and material, and had failed to prosecute the work with promptness and diligence, and certified that this failure, refusal, and neglect was such as to warrant the termination of the employment of the contractors. Accordingly, after proper notice, their employment was terminated, possession taken, and the building completed by the county.

The contract price of the building was to be paid in six installments of $3,484 each, and a final payment of $9,581. The contractors did all the work except that covered by the final payment. The plaintiff neither alleged nor proved that the architects had audited and certified the expense and damage incurred by the county through the default of the contractors, and for lack of this certificate the defendants insisted

the suit was prematurely brought and no recovery could be had. By special plea, by objection to the competency of testimony, by a motion to direct a verdict for the defendant, by special instructions to the jury, and by motion in arrest of judgment, this question was reserved. No such certificate was produced, there was no claim that any had·been made, and no reason was given for its nonproduction, except that it was not necessary, because the contractors had abandoned the contract. Notwithstanding the lack of certificate, the court below directed a verdict against both the contractors and their surety, the bonding company. In this we are constrained to hold the court erred. In instituting the suit, the county planted itself upon the contract, and the bond given for its faithful performance. It alleged that in terminating the employment of the contractors, it had faithfully observed all the conditions of the contract, and it sought a recovery, not only of the cost of completing the building, but the per diem damages for delay provided in case of default.

The distinction sought to be drawn by the plaintiff, that the suit is not one on the contract, but one for damages on account of the abandonment of the contract, does not appeal to us. This is not a case like the Fuller Company v. Doyle (C. C.) 87 Fed. 687, where the contractor, without doing any substantial work, abandoned the contract, but a case where the contractor, having done all the work except that covered by the last payment, had his employment terminated under article 5, through a strict compliance with its provisions. The damages sought to be recovered here are not damages outside the contract, but damages under the contract, resulting from a violation of its provisions. Accordingly, the surety is also sued. Now, the surety guarantied the faithful performance of the contract, and the measure of the damages for which it can be held responsible must be found in the contract itself. If there be in the contract a provision for ascertaining the amount of damages incurred through a violation of any of its provisions, the surety has a right to insist on its observance before being held responsible. Under the contract, the county had a right to insist on a certificate from the architects before paying the contractors for work 'done (Kihlberg v. United States, 97 U. S. 398, 24 L. Ed. 1106; Sweeney v. United States, 109 U. S. 618, 3 Sup. Ct. 344, 27 L. Ed. 1053; Martinsburg & Potomac R. R. Co. v. Marsh, 114 U. S. 549, 5 Sup. Ct. 1035, 29 L. Ed. 255; Chicago, Santa Fé & C. R. Co. v. Price, 138 U. S. 185, 11 Sup. Ct. 290, 34 L. Ed. 917; and United States v. Gleason, 175 U. S. 588, 602, 20 Sup. Ct. 228, 44 L. Ed. 284), and, under the contract, the contractors and their surety had a right to insist on a certificate from the architects before paying the county for work done after it took over the job under the provisions of article 5. The first certificate was, perhaps, peculiarly for the benefit of the county, but the second was more particularly for the benefit of the contractors and their surety. If a certificate was required to guard the rights of the county when the work was being done by the contractors, a certificate was also required to protect the rights of the contractors and their surety when the work was being done by the county. The reason for requiring one certificate is the ground for demanding the other.

Under the contract, the contractors agreed to construct a building according to certain specifications. The surety guarantied the faithful performance of this contract. Architects were selected to supervise the work, and the contractors had to present their certificates before receiving any pay. In case the contractors failed to finish the work, the owner might take over the job by complying with certain provisions. But, if he did, he was obliged to complete the work in accordance with the specifications, and, before he could collect what it cost beyond the contract price, he had to have the certificate of the architects showing the expense and damage incurred. In the case of the International Cement Co. v. Beifeld, 173 Ill. 179, 50 N. E. 716, where a building contract contained a clause identical in terms with that before us, the court held that the certificate of the architect was a condition precedent to the recovery from the contractor of the additional expense incurred in finishing the work. It was urged that the contractor abandoned the contract, but the court overruled the contention, holding that the case was tried upon the theory that the owner was entitled to such damages as were provided for by the contract, not damages outside of the contract. See, also, De Mattos v. Jordan, 20 Wash. 315, 55 Pac. 118, and Scott v. Texas Construction Co. (Tex. Civ. App.) 55 S. W. 37.

The judgment of the lower court is reversed, and the case remanded for a new trial.