Heidbrink v. Schaffner.

## WILLIAM HEIDBRINK, Respondent, v. L. S. SCHAFFNER et al., Appellants.

### St. Louis Court of Appeals, April 5, 1910.

1. **BUILDING CONTRACTS: Construction.** A building contract providing that the owner, on a certificate by the architect that the contractor has "failed in the performance of any of the agreements which said contract contained," may on three days' notice terminate the contract and complete the work, and that the expense incurred by the owner shall be certified by the architect, whose certificate shall be conclusive, contemplates delays, defaults and controversies of a minor character, arising upon stipulations of the contract but for which the owner might end the employment, if the architect deemed the default grave enough to justify such a step, but does not provide against the contingency of abandonment of the work by the contractor; and where the contractor abandons the work, the owner may complete it without obtaining the architect's certificate.

2. ———: **Stipulation for Certificate of Architect: Condition Precedent.** A building contract stipulating for the certificate of the architect as to whether breaches of the contract have occurred, or whether payments are due under it, requires the party seeking damages for a breach embraced in the stipulation to allege and prove that a certificate was given.

3. ———: ———: ———: **Action for Breach of Contract.** A contractor in a building contract, which stipulated that the owner on obtaining a certificate of the architect might terminate the contract and complete the work, and that the expense incurred by the owner should be audited by the architect, whose certificate should be conclusive, gave a bond conditioned on his performance of the contract. He abandoned the work, and the owner completed it and sued on the bond for the cost of completing the work. *Held*, that the owner need not allege and prove that a certificate had been given as to the expense of completing the work

Appeal from St. Louis City Circuit Court.—*Hon. Hugo Muench*, Judge.

AFFIRMED.

*John S. Leahy* and *Block & Sullivan* for appellants.

(1) The demurrers to the evidence offered by appellants should have been sustained. Dinsmore v. Livingston Co., 60 Mo. 244; Williams v. Railroad, 112 Mo. 489, S. C. 153 Id. 497; Chapman v. Railroad, 114 Mo. 547; Howard County v. Baker, 119 Mo. 407; McGregor v. Construction Co., 188 Mo. 623; Roy v. Boteler, 40 Mo. App. 222; Eldridge v. Fuhr, 59 Mo. App. 49; International, etc., Co. v. Biefeld, 173 Ill. 185; 30 Am. and Eng. Ency. of Law (2 Ed.), p. 1264; O'Keefe v. St. Francis Church, 59 Conn. 567; DeMattos v. Jordan, 15 Wash. 378; Tally v. Parsons, 131 Calif. 516; Scott v. Texas, etc., Co., 55 S. W. (Tex. Civ. App.) 38; American, etc., Co. v. Gibson Co., 127 Fed. 671; New York, etc., Co. v. Springfield, etc., Co., 56 App. Div. (N. Y.) 294. (2) The instruction given by the trial court to the jury was erroneous because it authorized a recovery without the production of the architect's certificate required by the contract. Cases cited supra.

*Kurt Von Reppert* for respondent.

(1) The conditions of the bond sued on are paramount to all stipulations in the contract; for it is the general rule, that one incurs the precise liability nominated in the bond, and he can relieve himself by performance of the conditions. The words "unconditionally bound" constitute a waiver of all stipulations in the contract. The covenants in bond to pay, etc., are independent and additional covenants to those mentioned and contained in the contract and stand without limitations upon them. The bond in suit is an "omnibus" bond. Davis v. Wells Fargo Co., 104 U. S. 164; Kent v. Silver, 106 Fed. 365; Harvesting M. Co. v. Laster, 70 Ill. App. 425, s. c. 81 Ill. App. 316; Robbins v. Robbins, 176 Pa. St. 341; Lionberger v. Krieger, 88

Mo. 160; Bank v. Trustee, 75 Mo. 199; Boteler v. Roy, 40 Mo. App. 234; Fisher v. Cutter, 20 Mo. 209; Cockran v. Stewart, 63 Mo. 424; Fisse v. Einstein, 5 Mo. App. 78; Martin et al. v. Whites & Cox, 128 Mo. App. 117. (2) The stipulation in article 5: "The expense incurred, etc., by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified to by the architects whose certificate thereof shall be conclusive upon the parties," is not merely a provision in the nature of an appointment of a third party for the purpose of an appraisement or valuation, but also involves and requires the determination of the question as to the measure of damage to be applied in the matter. It is, therefore, in the nature of a provision for arbitration and award. Such a provision, following after the express provision in said article 5, . . . but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner," does not, on arising of a dispute as to whether under the contract certain expenses ought to be taken as an element of damage to the owner, make such an award of arbitration a condition precedent to a right of action. Nor is such a provision for award and arbitration irrevocable. It is revoked by the institution of suit. The two stipulations, viz.: The one providing for the contractor to pay the owner such excess, and the other that the expense in finishing the work and damages incurred shall be audited and certified, are distinct and independent stipulations. The stipulation to audit and certify to the expense and damage is collateral. Neither by express stipulation or by the necessary implication is such an award by arbitration made a condition precedent to plaintiff's right of action, nor is such an award a grant of power coupled with an interest, and therefore irrevocable. If such a provision is to be construed to be an irrevocable award, then it is a plain attempt to oust the jurisdic-

tion of the courts to determine the rights of the parties. Such is against public policy and the law. George A. Fuller Co. v. Doyle, 87 Fed. 687; Mfg. Co. v. Locomotive Co., 119 Fed. 489; Hamilton v. Ins. Co., 137 U. S. 370, 380, 388, see cases Cent. Dig. No. 30; Green v. Cotton Co., 112 Fed. 743; Parsons v. Ambos, 121 Ga. 98; Lloyd on Building and Builders, pars. 15, 16, 17, 18; Preston v. City of Syracuse, 92 Hun (N. Y.) 301; Seward v. Rochester, 109 N. Y. 154; Canal Co. v. Coal Co., 50 N. Y. 250; Hurst v. Leifield, 39 N. Y. 377.

GOODE, J.—Defendant Schaffner contracted to erect a house for plaintiff for $5800 by December 1, 1906. The work on the house progressed to a certain stage until December first, when Schaffner quit work, he testified, because he had no money to pay for labor or material and claiming plaintiff had not paid him the installments of the price as agreed. Schaffner notified plaintiff he would not complete the house and abandoned the contract, so the jury must have found under the instruction about what facts would authorize a verdict for plaintiff. Plaintiff then took charge of the job and completed it, he alleges at a cost above the agreed price of $1841.22, for which sum he sued Schaffner and the other defendants who were his bondsmen. This notice was sent by Schaffner to plaintiff December first:

"William Heidbrink, Overland Park, Missouri.

"Dear Sir: This is to notify you that as you have failed to make the payments called for by your contract for the erection of store and dwelling, at the southwest corner of Goodale and Lackland avenue, your contract with me is forfeited.

"Respectfully,

"L. S. SCHAFFNER."

At the date of said notice the building was not nearly finished, though it was to have been finished by

said date.  The contract for building the house was in writing and contained this article which is material to the appeal:

"Art. V.  Should the contractor at any time refuse or neglect to supply a sufficiency  of  properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements contained herein, such refusal, neglect or failure being certified by the architects, the owner shall be at liberty, after three days' written notice to the contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract; and if the architects shall certify that such refusal, neglect or failure is sufficient ground for such action, the owner shall also  be  at liberty to terminate the employment of the contractor for the said work and to enter upon the premises and take possession, for the purpose of completing the work included, under this contract, of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor ———— shall not be entitled to receive any further payment under this contract until said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor; but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner.  The expense incurred by the owner as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architects,

whose certificate thereof shall be conclusive upon the parties."

The bond on which the present action was filed, reads:

"Know All Men By These Presents: That I, L. S. Schaffner, as principal, and we, T. F. Maloney and Cornelius P. Maloney, as securities, are jointly and severally held, and firmly bound unto Wm. Heidbrink in the sum of five thousand ($5000) dollars, lawful money of the United States of America, well and truly to be paid to the said Wm. Heidbrink, for which payment well and truly to be made, we bind ourselves, and each of us by himself, our and each of our heirs, executors and administrators, firmly by these presents. Sealed with our seals and signed with our hands this 8th day of September, in the year of our Lord, nineteen hundred and six.

"The condition of the above obligation is such, that whereas, the said L. S. Schaffner has on the day of the date of these presents, executed and entered into a certain contract for the erection of a certain building in said contract described, which contract is hereto annexed: Now, if the said L. S. Schaffner shall well and truly perform and fulfill all and every the covenants, conditions, stipulations and agreements in said contract mentioned to be performed and fulfilled, and any alterations and additions to said contract, provided such alterations and additions, if any such be made, shall not exceed in extra costs the sum of five hundred dollars ($500).

"We, the said sureties, hereby expressly waiving all rights to be notified of, or by any further act to give our assent to such alterations and additions and acknowledging ourselves to be bound unconditionally for the faithful performance of said contract and of such alterations and additions within limit of said contract price and of such extra costs aforesaid, and shall keep the said Wm. Heidbrink harmless and indemni-

fied from and against all and every claim, demand, judgments, liens, and mechanic's liens, costs and fees of every description incurred in suits or otherwise, that may be had against him or against the building to be erected under said contract, including such alterations and additions, and shall repay the said Wm. Heidbrink all sums of money which he may pay to other persons on account of work done and labor or materials furnished on or for said building, and if the said L. S. Schaffner shall pay to the said Wm. Heidbrink all damages he may sustain, and all forfeitures to which he may be entitled by reason of the non-performance or malperformance on the part of said L. S. Schaffner of any of the covenants, conditions, stipulations and agreements of said contract, including such alterations and additions, then this obligation shall be void, otherwise the same shall remain in full force and virtue.

"Witness our hands and seals.

"L. S. SCHAFFNER (Seal),

"TIMOTHY MALONEY (Seal),

"CORNELIUS P. MALONEY (Seal)."

Plaintiff had judgment for the penalty of the bond, his damages being assessed at $750, with interest at six per cent from March 12, 1907, to the date of the verdict, March 8, 1909, and also for one hundred dollars as damages for a separate breach stated in the petition, of the covenant in the contract to complete the house by December 1, 1906, in consequence of which breach plaintiff lost the rent of the premises for two months. The contention is plaintiff cannot recover on the bond because the architect under whose supervision the house was to be erected, gave no certificate, as required by article V of the contract, of the expense incurred by plaintiff in completing the work or damages suffered through the delay or default of the contractor in not finishing the job, and gave no certificate authorizing plaintiff to complete the work as provided in said article. To these contentions plain-

tiff replied the bond bound the defendants unconditionally to pay damages in case there was a default on the part of Schaffner in compliance with the contract. Further, that the defense of want of a certificate by the architect certifying Schaffner had neglected, failed and refused to comply with his undertaking and regarding the expense incurred by plaintiff in completing the work, was not set up in the answer, which was only a general denial, and such a defense cannot be brought into a case except by pleading it specially in bar; further, that the defense based on want of certificates of the architect regarding the items sued for was waived by permitting evidence to go in without objection to prove the reasonable value of the material and work paid for in consequence of the contractor's default and joining issue on the question of their value. Article III of the contract said no alteration should be made in the work except on the written order of the architect, and the amount to be paid by the owner or allowed by the contractor should be stated in the order; if the owner and contractor could not agree as to the amount, the matter should be arbitrated, as provided for in article XII. Article VII provided for an extension of time to complete the building if the contractor was delayed by fault of the owner or architect or other enumerated causes. Article VIII said the owner should furnish all labor and material essential to the work and not included in the contract, so as not to delay its completion, and if he failed to do this and thereby caused loss to the contractor, he should reimburse the latter for the loss and in case the two disagreed as to the amount, it should be arbitrated. Article IX provided for payments of installments on the price of the house when certain stages of its progress toward completion were certified to by the architect. Article X said no payment or certificate of the architect made or given under the contract, except the final payment or certificate,

should be conclusive evidence of the performance of the contract in whole or in part, and no payment should be construed as an acceptance of defective work or improper materials. Article XII provided for arbitration of disputes arising over matters contained in articles III, VII and VIII; but said nothing about the arbitration of any other controversies. Such are the provisions of the contract which throw light on the powers of the architect or the function of certificates issued by him, and it will be perceived none of the articles except the fifth has a bearing on the present controversy. We have referred to article XII and its provision for the arbitration of certain disagreements because plaintiff contends that to give article V the construction defendants insist upon, would make it provide for submitting to the arbitration of the architect, disputes over matters mentioned in article V, and this construction would render it void, as it would oust the jurisdiction of the courts. We merely observe in this connection that article V cannot be construed to mean controversies over the matters dealt with in it should be arbitrated by the architect; the contract provides for the arbitration of no controversies except those referred to in article XII. We sustain the judgment below for a different reason. It is clear to our minds article V did not contemplate renunciation of the contract by the contractor or provide what should be done if he renounced it and abandoned work on the building before it was completed. The first part of the article relates to the possible failure of the contractor either to supply sufficient skilled workmen and sufficient material of the proper quality or to prosecute the work with promptness and diligence in any respect, or perform any of the agreements contained in the contract. If either of those defaults in his obligation happened, then, after the default had been certified by the architect, plaintiff was at liberty to provide labor or material and deduct the cost of it from money due the

contractor, first giving the latter three days' notice. It may be argued plausibly that those clauses, and particularly the words "fail in the performance of any of the agreements herein contained," are broad enough to cover an abandonment of the job by the contractor. The word "agreements" is against this view, and rather suggests the phrase just quoted contemplated non-performance of any stipulation in the contract, instead of a renunciation of the contract as a whole, and that "agreements" was used as the synonym of "stipulations." Anyhow those first clauses of the article must be read in connection with the remainder, and when so read it is plain the contingency of abandonment by the contractor was not provided against. The article goes on to say, in effect, that if the architect should certify the contractor had refused, neglected or failed to perform in any respect previously mentioned, and that the default was sufficient ground ·for the owner to terminate the employment, then the owner would be at liberty to terminate it and take possession of the premises for the purpose of completing the work. Said provision was written in language which will not bear the meaning that it was applicable when the contractor himself had terminated the employment; for it declared the owner might do this on receipt of a certificate from the architect that the conduct of the contractor had given cause to dismiss him. Besides, if the contractor renounced the contract, there would be no occasion for the certificate of the architect, and the owner could not terminate the employment as it would have been terminated already by the contractor. It is palpable, therefore, that article V contemplated delays, defaults, differences of opinion and controversies of a minor character arising upon stipulations of the contract, but for which the owner might end the employment if the architect deemed the defaults grave enough to justify such a step. Other-

147 App—41

wise expressed, both parties agreed to abide by the decision of the architect as to when Schaffner had been guilty of breaches of the contract that were ground for the owner to take charge of the work and complete it; but did not agree the architect should certify to a renunciation by the contractor of his obligation in its entirety, as the condition on which plaintiff might take charge and furnish labor and material to complete the house, if Schaffner renounced his task.    In the argument for defendants, the chief emphasis is laid on the last clause of article V which said the architect's certificate should conclude the parties regarding the expense plaintiff might incur in furnishing material and finishing the work, and the damages he might suffer through the contractor's default.    But this clause has reference to the previous clauses of the contract; for it opens by saying the "expense incurred by the owner *as herein provided,*" etc.; that is to say, expense plaintiff might incur if Schaffner should delay the work, or otherwise default in the performance of his contract, to such a degree as to induce the architect to certify the default was ground for plaintiff's terminating the employment and completing the house; a contingency that never arose, because, though Schaffner fell far behind in the performance of his contract and the house was not nearly complete by the day it was to be turned over to plaintiff, which was the very day Schaffner renounced the contract, his defaults had been tolerated until then, and neither plaintiff nor the architect had interfered with him.    We accede to the proposition asserted by counsel for defendants that a stipulation for the certificate of an architect about whether breaches of a contract have occurred or payments are due under it, or any like matter, requires the party who seeks damages for a breach embraced in the stipulation, to allege and prove a certificate was given. [Williams v. Railroad, 112 Mo. 463, 486; 153 Mo. 497, 20 S. W. 631; Roy v. Boteler, 40 Mo. App. 213; El-

dridge v. Fuhr, 59 Mo. App. 44, 53.] But this action is not for such a breach of contract; is not on the contract at all, but on the bond given by defendants to secure its faithful performance; and it will be observed the bond contains ample, though incoherent, terms of obligation. Of course it bound Schaffner to perform instead of renounce the contract, and this action is really to obtain damages entailed by his renunciation; a matter of which, as pointed out, the contract says nothing. Hence we hold plaintiff was not called upon to allege and prove a certificate had been given by the architect as to the expense plaintiff had incurred for material and labor in finishing the house after Schaffner had quit the job. This conclusion was announced in a case on an identical bond and contract in Fuller v. Doyle, 87 Fed. 687, 692. The same result would prevail according to the authority just cited, from defendants having joined issue regarding the reasonable cost of the completion of the house by plaintiff, instead of pleading in defense to plaintiff's action on the bond, that the last clause of article V of the contract provided the only method of ascertaining the expense. But we regard that view as inconsistent with the construction of article V already given and which we consider the right view of its meaning. If the gravamen of this case fell within the terms of article V, then, possibly, as the case is on the bond, it would be matter of defense that the mode of measuring the cost provided in said article was not followed. We have read all the cases cited in the brief for defendants in support of their position, and find they are out of point for one of two reasons, either because the contract had not been renounced by the contractor, but only defaults had occurred to warrant a certificate from the architect under the terms of article V supra, as was the fact in International, etc., Co. v. Biefeld, 173 Ill. 185, and O'Keefe v. St. Francis Church, 59 Conn. 567; or, if there had been a renunciation of the

contract, that document called for a certificate from the architect in such a contingency before the owner was empowered to complete the work. [De Mattos v. Jordan, 15 Wash. 378; Am., etc., Co. v. Gibson County, 127 Fed. 671; Tally v. Parsons, 131 Calif. 516.]

The judgment is affirmed. All concur.