ALFRED H. JOBLIN, Appellant, v. ILLINOIS SURETY COMPANY, Respondent.

St. Louis Court of Appeals. Argued and Submitted December 7, 1915. Opinion Filed January 4, 1916.

1. TRIAL PRACTICE: Findings by Trial Court Without Request: Effect. In an action at law tried to the court, a memorandum of the court's findings, which is not made at the request of either of the parties, does not fall within Sec. 1972, R. S. 1909, and hence does not have the effect of a special ver-

dict, as do findings made pursuant to that statute, but the finding is to be treated as a general verdict.

2. **APPELLATE PRACTICE: Conclusiveness of Finding.** In an action at law tried to the court, the finding of the court on conflicting evidence is conclusive, on appeal, where no error was made in the application of the law.

3. **BUILDING CONTRACTS: Completion of Work by Owner: Certificate of Architect: Liability of Contractor and Surety.** Under a building contract authorizing the owner to terminate the employment and finish the work himself, on three days' notice, after certification by the architect that the contractor had failed to prosecute the work with diligence and that such failure was sufficient ground for action by the owner, and providing that the expense incurred by the owner in finishing the work shall be audited and certified by the architect, the contractor and the surety on his bond for faithful performance of the contract are not liable to the owner for expenses incurred in finishing the work, where the contractor did not renounce the contract, unless such expenses were audited and certified by the architect, as required by the contract.

4. **APPELLATE PRACTICE: Conclusiveness of Trial Theory.** Parties are held, on appeal, to the theory upon which they tried the case; and hence the appellate court will not consider a point that a certain issue is not in the case, because not pleaded, where the case was tried below on the theory that such issue was in the case.

5. **PRINCIPAL AND SURETY: Liability on Building Contract: Appellate Practice: Prejudicial Error.** In an action on a bond given to secure the faithful performance of a building contract, *held* that the failure to prove that the expenses incurred by plaintiff, to recover which the action was brought, were not audited or certified by the architect, as required by the contract, should not be regarded as harmless to defendant surety company by reason of the fact that it was a surety for hire and, therefore, the doctrine of *strictissimi juris* did not apply, in view of the fact that the trial court, as trier of the facts, made a general finding against plaintiff.

ON MOTION FOR REHEARING.

6. **BUILDING CONTRACTS: Completion of Work by Owner: Certificate of Architect: Liability of Contractor and Surety.** Under a building contract authorizing the owner to terminate the employment and finish the work himself, on three days' notice, after certification by the architect that the contractor had failed to prosecute the work with diligence and that such failure was sufficient ground for action by the owner, and providing that the expense incurred by the owner in finishing the

work shall be audited and certified by the architect, the contractor and the surety on his bond for faithful performance of the contract are not liable to the owner for expenses incurred by the owner in finishing the work, unless, prior to the owner's taking over the work, the architect certified that the contractor had failed to prosecute the work with diligence and the contractor was given three days' notice of the owner's intion, in conformity with the contract.

Appeal from St. Louis City Circuit Court.—*Hon. Rhodes E. Cave*, Judge.

AFFIRMED.

*Jesse McDonald, Joseph A. Wright* and *Arnold Just* for appellant.

(1) The rules applicable to compensated sureties are radically different than those applicable to the old-fashioned accommodation sureties; the doctrine of *strictissimi juris* no longer prevails, and in its stead is the doctrine that a compensated surety must show some injury before it can be released for deviations from the contract. Lackland v. Renshaw and Surety Co., 256 Mo. 133; Rule v. Anderson et al., 160 Mo. App. 347; Boppart v. Surety Co., 140 Mo. App. 675; Williams v. Pacific Surety Co., 149 Pac. 524; City of Phila. v. Surety Co., 231 Pa. St. 208, 80 Atl. 62; Bross v. McNichols, 66 Ore. 42, 133 Pac. 782; U. S. Fidel. & Guar. Co. v. U. S. to Use, Etc., 191 U. S. 416, 48 L. Ed. 242; U. S. to Use, Etc., v. U. S. Fidel. & Guar. Co., 178 Fed. 721; Lakeside Land Co. v. Surety Co., 105 Minn. 213, 117 N. W. 431; Crystal Ice Co. v. Surety Co., 159 Mich. 102; Bank v. Fidel. & Deposit Co., 128 N. C. 366; Hill v. American Surety Co., 200 U. S. 197; Illinois Surety Co. v. Huber (Ind.), 107 N. E. 298. (2) Defendant was not released because additional work was done without the written order of the architect, it appearing that the architect orally approved the work, and not appearing that loss or increased risk resulted to the surety. Lackland v. Renshaw, 256 Mo. 133; Rule v. Anderson, 160 Mo. App.

347; Boppart v. Surety Co., 140 Mo. App. 675; American Surety Co. v. Scott, 18 Okl. 264; Cowles v. U. S., Etc., Co., 32 Wash. 120, 72 Pac. 1032. (3). The plaintiff had the right under the contract to take charge of the work in case of the contractor's default, and the points urged as to the failure of the architect to, in writing, certify such default, and the failure to give a notice additional to that of December 9, are not available to defendant, because, (a) They are without substance, there having been no loss or increase of risk to the surety. Lackside Land Co. v. Surety Co., 105 Minn. 213, 117 N. W. 431; Lackland v. Renshaw, 256 Mo. 133; Monro v. Surety Co., 47 Wash. 488, 92 Pac. 280; Hefferman v. U. S. Fidel. & Guar. Co., 37 Wash. 477, 79 Pac. 1095; Pulaski Hall Assn. v. American Surety Co., 123 Minn. 222. (b) They were not pleaded. Nodaway Drainage District No. 1 v. Illinois Surety Co., 252 Mo. 543; Burgess v. Insurance Co., 114 Mo. App. 169; Hilburn v. Insurance Co., 140 Mo. App. 355. (4) Defendant was not released by the failure to secure the architect's certificates of expenditures, it affirmatively appearing that no loss resulted from such failure. Lackland v. Renshaw and Surety Co., 256 Mo. 133; Smith v. Malleson, 148 N. Y. 241; Church v. Curtis (Minn.) 153 N. W. 259; Southwestern Surety Co. v. Minnetonka Lumber Co., 148 Pac. 1038; St. John's College v. Aetna Indemnity College, 120 N. Y. Suppl. 496.

*Percy Werner* for respondent.

(1) This was a jury waived case. Neither party asked for special findings of fact nor were declarations of law asked by either party. No point is made as to the admissibility of any evidence admitted or rejected. In this state of the record the appellate court has nothing to determine. Rice, Stix & Co. v. McClure & Harper, 74 Mo. App. 383. The written opinion filed

by the court and copied into the bill of exceptions is
not treated as equivalent to findings of fact or conclu-
sions of law.  Insurance Co. v. McDearman, 133 Mo.
App. 671;  Little v. Hooker Steam Pump Co., 122 Mo.
App. 620.  (2)  The distinct finding of the issue as to
the abandonment of the work by the contractor, in
favor of the defendant below, settles every question in
this case.  (3)  Even had there been an abandonment
of the work by the contractor, the failure of the plain-
tiff to allege and prove that the expense incurred by
the owner for finishing the work had been audited and
certified by the architect would have been fatal to his
right to recover.  American Bonding Co. v. Gibson
County, 127 Fed. 671;  Same case, 145 Fed. 871.  (4)
The changes in the building contract in the way of
alterations and additions in the building, destroyed
the identity of the contract and released the surety,
and it is immaterial that they varied the expense but
little.  Beers v. Wolf, 116 Mo. 179;  Reissans v.
Whites, 128 Mo. 135;  Burne's Estate v. Fid. & Dep.
Co., 96 Mo. App. 467;  Eldridge v. Fuler, 59 Mo. App.
44;  Killoren v. Meehan, 55 Mo. App. 427.  (5)  The
fact that a surety has received compensation for go-
ing upon a bond, and is held to the liability of an in-
surer, furnishes no warrant for closing one's eyes to
the plain terms of the contract, the faithful perform-
ance of which each surety has attempted to secure.
An examination of a few Missouri cases will show
that, even as to the friendless insurance company, the
courts enforce the contracts of parties as they make
them, though often hard.  Kennefick-Hammond Co. v.
Insurance Co., 119 Mo. App. 308;  Evanston Golf Co.
v. Insurance Co., 119 Mo. App. 175;  Bradley v. In-
surance Co., 90 Mo. App. 349-369;  Cummins v. Insur-
ance Co., 81 Mo. App. 291;  Hoover v. Insurance Co.,
93 Mo. App. 111;  Pearson v. Insurance Co., 73 Mo.
App. 480.  (6)  The admissions of plaintiff contained

in his petition in his suit against his architects show that defendant, as surety, was released from any liability to plaintiff under the contract. Bowman v. Globe Steam Heating Co., 80 Mo. App. 628; Kirkpatrick v. Metropolitan St. Ry. Co., 211 Mo. 68. (7) Defendant's special defenses were properly pleaded. As an answer to the charge of abandonment of the contract, by the contractor, respondent could not well have pleaded the failure to secure a certificate from the architect as to default in the rate of progress of the work. So the requirement as to the architect's certificates of expenditures affected only the competency of the evidence, as plaintiff was bound to procure the kind of evidence required by the contract. (8) The only distinction between the voluntary and the hired surety lies in the application of the *strictissimi juris* doctrine; where there is no room for the application of that doctrine, if the contracts which they sign are the same the resulting liability is identical without regard to the fact that one is corporate and the other not, or that one is compensated and the other gratuitous. Stearns "The Law of Suretyship," secs. 250, 251 and 252.

REYNOLDS, P. J.—Action on contract and bond for the erection of a building to be occupied as a residence by plaintiff, who seeks to recover $1728.28 as excess necessarily paid out by him over the contract price to mechanics and materialmen in order to complete the building, the contractor, Banner Land & Building Company, as it is alleged, having abandoned the work before its completion. The action was originally brought against the contractor as well as against the Illinois Surety Company, surety on the bond, but was dismissed as to the contractor, no service of process having been made upon it and it not appearing to the action. The trial was before the court, a jury hav-

ing been waived, and at its conclusion the court found in favor of defendant and entered up judgment accordingly, from which plaintiff appealed.

At the close of the case defendant offered a demurrer and it is stated in the abstract prepared by appellant that the court sustained this demurrer. That statement is obviously incorrect. The demurrer was offered but no action of the court upon it anywhere appears. Moreover a memorandum filed by the court in announcing its decision, as well as the judgment itself, which appears in the short transcript filed with us, negatives the idea that the case went off on demurrer. The judgment recites the appearance of plaintiff and the Illinois Surety Company by their respective attorneys, the waiver of a jury, and then recites that the parties submit the cause to the court "upon the pleadings, the evidence and the proof adduced, and the court having heard and duly considered the same, and being fully advised in the premises, doth find the issues in favor of the defendant Illinois Surety Company, wherefore, it is considered and adjudged," etc. Obviously, this is not a judgment upon a demurrer. In fact we do not understand that beyond this recital in the abstract learned counsel for appellant so contend.

In rendering his decision in the case the learned trial judge filed a memorandum which has been brought up by appellant. As this finding or memorandum was not made at the request of either party, and does not therefore fall within the provisions of section 1972, Revised Statutes 1909, it has not the effect of a finding under that statute, that is, does not have the effect of a special verdict, as do such findings (South St. Joseph Land Co. v. Bretz, 125 Mo. 418, l. c. 423, 28 S. W. 656), and is to be treated as a general verdict. [See Lesan Advertising Co. v. Castleman, 265 Mo. 345, 177 S. W. 597.] As was said by our Supreme

Court in Mead v. Spaulding, 94 Mo. 43, 6 S. W. 384, while such opinion cannot be made to take the place of instructions, or a finding of facts given as an instruction, "the opinion of the trial court may be cited and used in the consideration of the case presented by the record, and in that respect is often of great value to us; but it is not part of the record upon which the case must be determined in this court." That the appellate courts have availed themselves of such memorandum without having been bound by it as a part of the record, appears in very many cases.

In the case at bar no declarations of law were asked unless the demurrer to the evidence which we have before referred to as not having been passed upon may be considered as such; no declarations of law as such were given. It is clear that this case was determined by the trial court largely on the weight of evidence, the evidence being conflicting. Where that is the case, if no error has been made in the application of law, the finding of the trial court is conclusive upon our court. [Jordan v. Davis and other cases *post*.]

We cannot state the case better on its facts or on its law than stated by the learned trial judge, and hence avail ourselves of the memorandum filed by him, not, as before said, as conclusive upon us, or as part of the record proper, but as a correct and succinct statement of facts and of the law. For a better understanding, however, of one of the principal points of controversy in the case, it is well to say that article III of the contract and bond, in substance, provides that no alterations shall be made in the work, nor extra work done, except upon written order of the architects, and article V, in substance, provides:

"Should the contractor at any time refuse or neglect to supply a sufficiency of properly-skilled workmen, or of materials of the proper quality, or fail in

any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements herein contained, such refusal, neglect or failure being certified by the architects, the owner shall be at liberty after three days' written notice to the contractor to provide any such labor or materials, and to deduct the cost thereof from any money then due, or thereafter to become due to the contractor, under this contract; and if the architects shall certify that such refusal, neglect or failure is sufficient ground for such action, the owner shall also be at liberty to terminate the employment of the contractor for the said work and to enter upon the premises and take possession, for the purpose of completing the work included under the contract, of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials thereof; . . . The expense incurred by the owner herein provided, either for furnishing materials or for finishing the work, and any damages incurred through such default shall be audited and certified by the architects, whose certificate thereof shall be conclusive and binding upon the parties.''

The architects here referred to are Mariner & La Beaume, and the member of that firm who seems to have had charge of this particular work was Mr. Mariner. This by way of explanation.

We use so much of the memorandum of the court above referred to as we think material and necessary, as follows:

''On the 12th day of August, 1907, plaintiff A. H. Joblin entered into a contract with the defendant, the Banner Land and Building Company, for the erection of a certain dwelling house, for the faithful performance of which contract the Banner Land and Building Company and its codefendant, the Illinois Surety Company, entered into a bond in the sum of

$2849. The contract and bond were in the usual form and provided for the work being done under the supervision of Mariner & LaBeaume, architects, and for the making of alterations and payments under the contract on the certificates of such architects.

"The work progressed under the contract in the usual way until some time in the latter part of November, or the first of December, when, the evidence discloses, the plaintiff visited the work and found no work being done and so reported to the architect, Mr. Mariner.

"The architects then, under date of December 9, 1907, gave to the defendant Banner Land and Building Company a notice, as provided in the contract, that owing to the fact that no work had been done on the building for some time past, they begged to call attention to article V of the contract and to notify said defendant that unless this work was started within three days from date that they would take other means to complete the contract.

"So far, there is no controversy in the evidence. The evidence discloses that then the architect sought to locate Mr. Morris, the president of the Banner Land and Building Company, but found him out of the city. At the same time the agent of the defendant Illinois Surety Company, having received notice of the existing condition, took the matter up in a general conference between Mr. Mariner, the architect, Mr. Atwood and Mr. Hopkins, representing the defendant Illinois Surety Company. As to what was then done, the witnesses differ. Mr. Mariner testifies that he took the matter up with Mr. Atwood and informed him that Mr. Morris, the president of the Banner Land and Building Company, was out of town and asked him how to proceed with the least possible delay, and states that from that time on he proceeded to do the work on the day basis; and on consultation

with Mr. Atwood employed William Morris to super-
intend the work; that thereafter all payments were
made after approval by Mr. Atwood, agent of the Illi-
nois Surety Company; and that thereafter he (Mr.
Mariner) discharged Morris and employed one Mur-
phy to complete the work.

"In brief, Mr. Mariner's testimony is to the effect
that at or about December 9, and after the giving of
the notice under date of December 9, above referred
to, he as the representative of the owner and with the
consent of the defendant Illinois Surety Company,
proceeded with the completion of the work on behalf
of the plaintiff, and that the connection of the Banner
Land and Building Company with the work from that
time on ceased.

"On the other hand, Mr. Atwood testified that, on
receipt of a copy of the notice of December 9, he took
the matter up with his Chicago office, and as a result
thereof Mr. Hopkins, representing the defendant
Surety Company, came to St. Louis, and that he and
Mr. Hopkins and Mr. Mariner took the matter up and
it was agreed that the work should be continued by the
Banner Land and Building Company under the direc-
tion of its superintendent, Mr. William Morris, and
that the payments should be made with the o. k. of Mr.
Mariner and himself, Mr. Atwood; that thereafter he
continued to o. k. such payments as were made on ac-
count of the work and labor done and material fur-
nished by the Banner Land and Building Company,
and so continued up to January 20, 1908, when, accord-
ing to his testimony, a man named Murphy came into
his office with an order for some $650 for completing
the work; and that he then, for the first time, learned
that the work was not being completed by the Banner
Land and Building Company.

"In addition to this, there is the testimony of
Mr. William Morris to the same effect as that of Mr.

Atwood, that he, as superintendent of the Banner Land and Building Company, was continuing the work and did so continue it until he was prevented from further doing so by Mr. Mariner; and furthermore, the defendant's contention on this point is supported by the action of the parties at the time, as evidenced by their letters. In a word, if the position of Mr. Mariner and of the plaintiff that the connection of the Banner Land and Building Company with the work was termiated at or about December 9, when the notice above was given, why was it necessary for the architects to again, under date of December 20, give to the Banner Land and Building Company a notice to proceed to complete the brick work within three days or that they would relet the contract?

"The determination of the question of fact as to whether or not the defendant Banner Land and Building Company renounced the contract or abandoned the work, or whether, on the other hand, they were so slow in the completion of the work that the architects, under the provision of the contract, gave them the three days' notice provided for in the contract and took the further steps therein provided for the completion of the work by other parties, is, in the opinion of the court, determinative of the case; and for that reason the evidence on this point has been given most careful consideration, and as a result of that consideration, the court has concluded that the Banner Land and Building Company did not renounce the contract or abandon the work.

"And this conclusion is supported by the action of the parties themselves, for, if the Banner Land and Building Company renounced the contract, then it was not necessary that the architects should give to them any notice, but the plaintiff would have had the right to proceed to complete the work without any notice. But instead of so doing, the parties themselves at all

times proceeded under the theory that the contract had not been renounced and that the conditions existed which are covered by article V of the contract in question.

"And if the conditions covered by article V did exist, then, even though we should presume, which the court does not find, that all steps, as provided by that article, were properly taken by the architects before completion of the work, nevertheless, the failure of the plaintiffs to allege and prove that the expense incurred by the owner for finishing the work had been audited and certified by the architect is fatal to his right to recover. [See American Bonding Co. v. Gibson County, 127 Fed. 671.]

"In that case the provisions of the contract were the same as those of article V of the contract here in question, and there all steps were properly taken, as provided by the contract in said article V. The plaintiff brought suit against the bonding company to recover the cost of completing the work. The plaintiff there, as here, neither alleged nor proved that the architects had audited and certified the expense and damage incurred by the county through the default of the contractors, and for lack of this certificate the defendants insisted the suit was prematurely brought and no recovery could be had; and it was held that the obtaining of this certificate of the architects was a condition precedent to the plaintiff's right of action, and that the petition must allege and the fact must be proven that at the time of the bringing of the suit the expense, damage, etc., had been audited and certified by the architects, or that the architects had legally refused to do so, though properly requested."

(We may add here that this same case of American Bonding & Trust Co. v. Gibson County was again before the United States Circuit Court of Appeals of

the Sixth Circuit and followed on the above point.) [See 145 Fed. 871.]

Continuing, the learned circuit judge refers to Heidbrink v. Schaffner, 147 Mo. App. 632, 127 S. W. 418, as a case particularly relied upon by the plaintiff below and as one in which a construction of an article similar to article V was involved, and distinguishes that case from the one at bar, in that there the contractor had absolutely renounced the contract, hence it was held that no notice or certificate was necessary.

Continuing the learned trial judge said:

"How different, however, is the case at bar! As above set out, not only does the evidence here fail to show any renunciation of the contract, but the parties, particularly the architects, here at all times, at least up to the time of issuing a certificate authorizing the plaintiff to take over and complete the work, attempted to proceed under the provisions of article V of the contract, and this fact is shown in the plaintiff's own case. And furthermore, the court, as above set out, has found from the evidence that there was no renunciation of the contract, or even abandonment thereof, and that the work was continued up to December 21, 1907, when, as Mr. Mariner says, he discharged Mr. William Morris, who was conducting the work for the Banner Land and Building Company, and turned the work over to Mr. Murphy."

Accordingly the court found for the defendant, judgment following.

We have read all of the evidence as set out in the abstract filed with great care and find no reason to hold that the conclusion arrived at by the learned trial court is not supported by substantial evidence, and we think that in the determination of the cause that court has correctly applied the principles of law here applicable. We accordingly adopt it as our own.

193 App. 10

Learned counsel for appellant argues that defendant did not plead want of certificate from the architects, citing among other authorities Nodaway Drainage District No. 1 v. Illinois Surety Co., 252 Mo. 543, l. c. 558 and 563, 160 S. W. 999. It is true that the answer does not plead the lack of the certificates called for in paragraph 5 of the contract. But the case was tried on the theory that this paragraph was before the court and that defendant relied upon the absence of the certificate. Thus when plaintiff offered to prove the value of the work and material, it was agreed that the witnesses, if present, would testify as to the correctness of these items, counsel for defendant, however, reading this article V at length, made specific objection to the competency of the evidence on the ground that under article V "an audited and certified statement of the architect is the only method of proving" the liability of the defendant for these items. Without passing on the objection the court admitted the evidence. No objection was made by counsel for plaintiff, that the absence of a certificate had not been pleaded. The case was tried on the theory that the question as to the necessity of the certificate was in issue. In fact, unless that was so, the citation of counsel for plaintiff to the trial court of Heidbrink v. Schaffner, supra, which the trial judge states was a cause upon which counsel for defendant "place great stress," would have been useless, as the question of the necessity of a certificate was there the principal point in decision. Parties are held to the theory on appeal upon which they tried the case.

So too, it is argued on the authority of Lackland v. Renshaw et al., 256 Mo. 133, 165 S. W. 314, that this being a hired surety and the doctrine *strictissimi juris* not applying that no harm resulted from the absence of the certificate. In the face of the finding of the trial

court for the defendant on the evidence, we do not think the Lackland case controlling or applicable here.

Appellant's learned counsel attack the conclusions of law as set out in the memorandum filed as if they were before us for review. While we adopt them, we are not to deal with them as before us for review. As before remarked, we cannot treat them as part of the record or as determinative of any question of law in them; we use them only as expressing our view of the facts and the law. In a case such as this, in which the trial was before the court, a jury having been waived, the evidence heard, no declarations of law asked, and a finding for defendant and judgment accordingly entered, the case stands as upon a general verdict in favor of the defendant. Treating the memorandum as surplusage and as not before our court, the judgment itself is nothing more nor less than a general finding and judgment in favor of the defendant on disputed, controverted evidence in the case. See Patterson v. Patterson, 200 Mo. 335, l. c. 340, 98 S. W. 613, as also Lesan Advertising Co. v. Castleman, supra, and to what is said in that case in the dissenting opinion, 165 Mo. App. 575, l. c. 603, 148 S. W. 433, approved by the Supreme Court. In brief, it is such a finding and judgment as cannot be reviewed on appeal, "unless declarations of law are asked and refused in order that the appellate court may see upon what theory the case was tried. Unless this is done the finding of the court is incontrovertible." [Jordan v. Davis, 172 Mo. 599, l. c. 608, and cases there cited, 72 S. W. 686; Chrisman v. Scholl, 177 Mo. App. 58, l. c. 60, 164 S. W. 131.]

So our court held in Olive Street Bank v. Phillips, 179 Mo. App. 488, 162 S. W. 721, where at page 494 in the official report it is said: "As the cause was tried below before the court without a jury, a jury having been waived, and no declarations of law were asked by either party and none given, if there is any sub-

stantial evidence upon which to base the judgment below, and if the latter can be held to be correct upon any theory whatsoever, it is our duty to sustain it.''

The judgment of the circuit court is affirmed. *Nortoni* and *Allen, JJ.,* concur.

## OPINION ON MOTION FOR REHEARING.

NORTONI, J.—On motion for rehearing it is earnestly argued the court did not sufficiently consider the principal point presented in the appeal, which is to the effect that, notwithstanding' the finding of the court on the facts, the judgment should be for plaintiff. It is said in this connection that article 5 authorized the architect to terminate all relations with the contractor, take the work out of his hands, and complete it otherwise; also that, in any view of the evidence, it appears the architect discharged the contractor, Banner Land & Building Company, on December 21, and completed the building through Murphy, by the day's work. In this the architect acted for plaintiff, but under the contract provisions conferring authority on the part of defendant with respect of the matter as well. Therefore it is said that, as the architect terminated the relations of the contractor and took the building out of its hands on December 21, the mere fact that the architect failed to issue certificates of audit for the bills accrued thereafter is of no consequence, in view of the recent decision of the Supreme Court in the case of Lackland v. Renshaw, 256 Mo. 133, 165 S. W. 314, for that it appears all of the moneys expended went into the completion of the building and no substantial loss was entailed on the surety as a result of the failure of the architect to audit the bills and issue certificates in the precise form required by the contract. But it is clear this argument predicates upon the fact that the architect dis-

pensed with the contractor and took charge of the work on December 21, under the authority of the contract. Manifestly such does not appear with the case in its present posture before us. In any view—and so much is conceded—the court found all of the facts against plaintiff.

It is not conceded that the architect discharged the contractor and took charge of the work on December 21 as the contract requires. Article 5 of the contract authorizes the owner, for failure on the part of the contractor to properly prosecute the work, to provide labor and materials and complete the same. But this provision appears to be operative only after three days' written notice to the contractor. On December 9 the architect, acting for the owner, gave the contractor proper notice calling attention to article 5 of the contract and reciting substantially that, unless the work was taken up on or before the 12th of December, the architect would take charge of it under the contract. But the evidence is—and manifestly, in view of the finding of the court for defendant, the court so found the fact to be—that the owner did not act on this notice and in accordance with it. On the contrary the architect, Mr. Mariner, Mr. Atwood, the surety company's agent, and Mr. Hopkins, the vice-president of defendant surety company, met and agreed the work should proceed in charge of the contractor under the supervision of William Morris. This agreement manifestly operated to dispense with the notice theretofore given on December 9 by the architect, and, according to the finding of facts, the contractor remained in charge of the work until December 21, through its superintendent, William Morris. Finally, on December 21, the architect peremptorily discharged the contractor and settled accounts with William Morris, its superintendent. Thereupon one Murphy was placed in charge of the work, it is said, under

arrangement for compensation by the day, and as the representative of plaintiff owner, to complete the building.

It is true the architect had authority, under article 5 of the contract, to dispense with the contractor, but he could only do so on giving three days' notice, and moreover the architect is required by article 5 to certify that the "refusal, neglect, or failure" on the part of the contractor "is sufficient ground for such action" —that is, of dispensing with the contractor's services and taking charge of the work to be completed under the direction of the owner. No notice whatever was given by the architect in respect of this matter and no certificate of any sort was made by him concerning the ground of his action in discharging the contractor on December 21. Moreover, it appears that, on the very day before, the architect treated the contractor as still in charge of the work, for he served a written notice on it—Banner Land & Building Company—to complete the brickwork within three days thereafter. The court evidently found the fact to be that the architect never terminated the contractor's relation, as such, with the building, and that he merely took charge of the work on December 21 without heeding the contract requirement in respect of that matter.

As we read and interpret article 5 of the building contract, it was a condition precedent to the right of the owner to discharge the contractor and take charge of the work, to give three days' written notice of his intention to do so, through the architect. This provision touching three days' notice refers as well, in our view, to the right of the owner through the architect to dispense with the contractor and take charge of the work for the purpose of completing the building as it does to the subject-matter immediately following that provision concerning his right to provide labor and materials, with respect to which the contractor

is in default. In this view, it appears the architect was a mere interloper when he dispensed with the contractor and discharged it and its superintendent, William Morris, on December 21, and took charge of the building for plaintiff owner to complete it by day labor. Such being true, of course the question concerning the sufficiency of certificates of audit in respect of expenditures after that date is of no avail, for that, in no view of the case, can the surety be held for work done by the owner after December 21 through employing men by the day in completing the building, when the owner was without right whatever in dispensing with the contractor and taking possession of the building. It is manifest that the architect bungled the matter in failing to dispense with the contractor and in taking over the work for plaintiff owner without heeding the provisions of article 5 of the contract touching that matter.

The motion for a rehearing should be overruled. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.

