# Hardie *v.* Bateson, Appellant.

*Contract—Suretyship—Building contracts—Bonds — Construction—Liability of surety—Discontinuance of action against principals.*

1. In an action against the surety upon a contractor's bond, where the contractor had defaulted, and plaintiff, the owner, had finished the work at a cost in excess of the contract price, it was no defense that certain payments for the work had been made by the owner to a party other than the contractor with the contractor's consent; the surety was not thereby discharged, there being no evidence that it was prejudiced by such payments, especially where it appeared that the liability of the surety was thereby reduced.

2. In such case a provision in the contract that for failure, refusal or neglect of the contractor to supply a sufficiency of properly skilled workmen, or failure to prosecute the work with promptness and diligence, the owner might terminate the employment of the contractor, enter upon the premises and finish the work and that the expenses incurred by the owner in so doing should be audited and certified by the architect, whose certificate thereof "shall be conclusive upon the parties," did not require that where the contractor defaulted and abandoned the work, the expense of completing it should be audited by the architect.

3. Where in such case, the bond provided that "until the expiration of the time within which liens or notices of liens may be filed, and until the discharge of such liens if any, the obligee shall at all times preserve and exercise all rights provided for his protection by the laws relating to liens of the state wherein said contract is to be performed," the owner was not required to file a no-lien contract, and was properly allowed reimbursement for payments made in discharging mechanics' liens filed by subcontractors and materialmen, particularly where it appeared that the contract which the surety company executed contemplated the filing of liens and contained no provision prohibiting the filing of liens by the contractor or subcontractors.

4. In such case where the action was brought against the principals as partners, and one of the principals died after suit brought, and the other was not a member of the partnership when the contract was made, the discontinuance of the action against the principals did not relieve the surety, and the court properly refused to direct a verdict for defendant.

Argued Oct. 18, 1915. Appeal, No. 196, Oct. T., 1915, by Massachusetts Bonding and Insurance Company, a Massachusetts corporation, from judgment of C. P. Allegheny Co., April T., 1914, No. 1475, on verdict for plaintiff, in case of Edward Hardie v. William Bateson and Thomas F. Manning, partners trading as Keystone Construction Company, and Massachusetts Bonding and Insurance Company, a Massachusetts Corporation. Before MESTRÉZAT, POTTER, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit on a contractor's bond. Before DAVIS, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $3,186.21 and judgment thereon. Defendant appealed.

*Errors assigned* were rulings on evidence, the refusal of the court to direct a verdict for defendant and to enter judgment for defendant n. o. v.

*Richard H. Hawkins,* of *Dalzell, Fisher & Hawkins,* for appellant.

*Donald Thompson,* with him *Blakeley & Calvert,* for appellee.

OPINION BY MR. JUSTICE STEWART, February 14, 1916:

The bond on which this suit was brought is dated 15th May, 1913. It recites that William Bateson and Thomas F. Manning, trading and doing business as the Keystone Company of Pittsburgh, as principal, and the Massachusetts Bonding and Insurance Company, as surety, are bound unto Edward Hardie in the sum of $8,450.00, conditioned that if the principal—The Keystone Construction Company—shall indemnify the obligee against any loss or damage directly arising by reason of the failure of the principals to faithfully perform its engagements arising under a certain building contract entered

into with the obligee, 10th April, 1913, a copy of which was attached, then the obligation to be void, otherwise to remain in full force and effect. The work on the building was begun by the contractor very shortly after the execution of the contract, and was proceeded with until the 3d day of September following when it was abandoned by the contractor and the building left in an unfinished state. The surety company, under the terms and conditions of the bond, would then have had the right to complete the building, if it saw proper, but having denied its liability on the bond, the owner, through his architect, proceeded with the work and carried it to completion, but at a cost considerably in excess of the contract price. The action was brought to recover this excess from the security company. The plaintiff claims to have expended in the entire work the sum of $11,-421.13, and he was awarded the differences, viz: $2,-971.13 with interest thereon, making a total of $3,186.48. As appears from the above recital the Keystone Construction Company was the trade name for William Bateson and Thomas F. Manning; but Manning had retired from the firm before the building contract was entered into and on May 27, 1913, the Bateson Construction Company, a corporation, was organized to succeed to the business of the Keystone Construction Company. It does not clearly appear that the corporation had engaged in other operations than those it succeeded to, notwithstanding the fact that it maintained one bank account in the name of the Bateson Construction Company, and one in the name of the Keystone Construction Company. Bateson was president of the Bateson Construction Company, apparently the only one interested in it financially, and was at the same time the surviving partner in the Keystone Company. The commingling of the two concerns has given rise to the first contention in the case. On the 16th July, 1913, Hardie paid on the contract by check to the order of Bateson Construction Company $750.00, and on August 15th, following he paid

an additional $700.00. These items enter into the excess for which recovery was had. They were objected to on the ground that they were voluntary payments made to another than to the contractor mentioned in the bond. Their allowance is the subject of the first four assignments of error. It is undisputed that they were paid pursuant to the terms of the contract, that is to say, on certificates from the architect that the money was due and owing on the contract. No other objection is urged than that we have stated. It is difficult to see how appellant was prejudiced in consequence of these payments. The contractor, except the checks were made payable to the Bateson Construction Company, at his instance, or at the instance of his representative, might have ground to complain, but certainly not the surety whose liability was thereby correspondingly reduced, regardless of who got the money. It is very ingeniously argued that because it passed to the credit of the Bateson Construction Company it was used in the business of that company on contracts it had for the construction of other buildings, whereas had it been entered to the credit of the contract, "it is fair to assume that the materialmen and subcontractors who afterwards filed mechanics' liens would have received some part of their subcontracts." The difficulty here is that we are not permitted to assume the existence of facts from which an inference of prejudice might be drawn. In Philadelphia, to use, v. Fidelity & Deposit Co. of Md., 231 Pa. p. 208, 213, it is said: "In a case of this kind there is no presumption that a surety company is harmed, the prejudice must be made to appear and the suggestion of mere contingencies or possibilities is not enough." The assignments are overruled.

The two assignments next following, fifth and sixth, complain of the allowance of the item, "Carpenters, $813.11" on the ground that the architect did not make out certificates for this work or expenditure, agreeably to the requirements contained in the fifth clause of the

contract. There would be much force in this position, with plenty of authority to support it, were this a case falling within the provisions of section five of the contract; but plainly it is not. A careful reading of the section has satisfied us that it is intended to apply only in cases where for one or more of the several reasons therein specified—failure, refusal, or neglect of the contractor, to supply a sufficiency of properly skilled workmen, or failure to prosecute the work with promptness and diligence,—the owner terminates the employment of the contractor, enters upon the premises and finishes the work. In such case the section provides that the expense incurred by the owner for finishing the work, and any damage incurred through the contractors default, "shall be audited and certified by the architect whose certificate thereof shall be conclusive upon the parties." The section contains no reference whatever to a voluntary abandonment of the work by the contractor and the entry of the owner in consequence. To require a certificate from the architect in such case as a condition precedent to a right of action, is to invent a requirement for the protection of a defaulting contractor which the contractor himself, when he entered into the contract, either overlooked or thought not worth inserting. In Geo. A. Fuller Co. v. Doyle, 87 Fed. Repr. 687, the dispute was identical with that we have here; the contract contained like provisions, and it was there held that under such circumstances—voluntary abandonment of the work by the contractor—the requirement of a certificate by the architect was inapplicable. In Heidbrink v. Schaffner, 147 Mo. App. 632, the same view was taken. That was a case of voluntary abandonment by the contractor, and it was there insisted on the part of the defense that there could be no recovery in the absence of a certificate from the architect. The court in a very clear and satisfactory opinion, following Fuller v. Doyle, supra, held that this same section five of the contract (p. 640), "did not contemplate renunciation of the contract by the contractor,

or provide what should be done if he renounced it and abandoned work on the building before it was completed, —that the contingency of abandonment by the contractor was not provided against." In this construction of the contract we concur, and accordingly overrule the assignment.

Mechanics' liens amounting to $4,793.02 were filed against the building by subcontractors and materialmen. These liens the plaintiff was required to discharge by payment, and for this he asked reimbursement, and his claim was allowed. A fourth condition in the bond is, "that until the expiration of the time within which liens or notices of liens may be filed, and until the discharge of such liens, if any, the obligee shall at all times preserve and exercise all rights provided for his protection by the laws relating to liens of the state wherein said contract is to be performed." It is contended that the owner was bound under the terms indicated to file a no-lien contract, which admittedly was not done. The contract on which the appellant became surety contemplated the filing of liens; at least it contains no provision prohibiting the filing of liens by contractor or subcontractors. The appellant must be held to have had full notice of this when it executed the bond, and the above-recited provision in the bond is to be construed in the light of this fact. Our attention has not been directed to any right provided by the laws of this State relating to liens, which the appellee neglected to observe and enforce to the prejudice of the appellant. The assignment relating to this branch of the case is without merit and is accordingly dismissed. So too the last remaining assignment which claims that discharge of the surety resulted from a discontinuance of the action against the two parties designated in the contract as principals, Manning and Bateson. It clearly appears, and indeed it is admitted, that Manning was not a member of the partnership when the contract was entered into for the construction of the building. The discon-

tinuance as to him was therefore without prejudice to the surety. Bateson died after suit was brought, but before the case was tried. Upon suggestion of the death of the latter, the plaintiff elected to proceed against the appellant alone. This he had a perfect right to do: Dingman, et al., v. Amsink, et al., 77 Pa. 114; Githers v. Clarke, 158 Pa. 616.

The judgment is affirmed.